Case No._____

# United States District Court For the District of Columbia

Case: 1:16-cv-01729
Assigned To : Contreras, Rudolph
Assign. Date : 8/25/2016
Description: Pro Se Gen. Civil (F Deck)

STEVEN S. MICHEL, *pro se*

*Petitioner*,

v.

ADDISON MITCHELL MCCONNELL, JR., UNITED STATES SENATOR,
CHARLES ERNEST GRASSLEY, UNITED STATES SENATOR,
AND THE UNITED STATES SENATE,

*Respondents.*

## EMERGENCY PETITION FOR
## DECLARATORY JUDGMENT AND WRIT OF MANDAMUS

RECEIVED

AUG 25 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

STEVEN S. MICHEL
New Mexico State Bar # 1809
2025 Senda de Andres
Santa Fe, New Mexico 87501
(505) 690-8733
stevensmichel@comcast.net

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES..........................................................................................iii

STATEMENT OF THE CASE.........................................................................................1

RELIEF SOUGHT...........................................................................................................4

ISSUES PRESENTED......................................................................................................5

PARTIES AND STANDING............................................................................................6

JURISDICTION AND VENUE......................................................................................10

FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED...................12

THE HARM CAUSED BY THE SENATE'S REFUSAL TO ACT.............................16

ARGUMENT – THE COURT SHOULD ISSUE A DECLARATORY JUDGMENT
AND WRIT OF MANDAMUS TO REMEDY THE SENATE'S FAILURE TO
PERFORM ITS CONSTITUTIONAL DUTY...............................................................19

    I.    When the President nominates a person to fill a Supreme Court vacancy,
the Senate has a non-discretionary duty, under Article II Section 2 of the
Constitution, to determine within a reasonable time whether it will
provide its advice and consent ...............................................................................19

    II.    The Senate, by its refusal to consider the nomination of Judge
Garland, has neglected its duty and should be required to promptly
undertake that determination................................................................................25

        A.  Justiciability...............................................................................................28
        B.  Speech or Debate Clause..........................................................................29
        C.  Political Question Doctrine.......................................................................31

CONCLUSION............................................................................................................... 33

## TABLE OF AUTHORITIES

**CASES:**

*Baker v. Carr*, 369 U.S. 186 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31

*Bell v. Hood,* 327 U.S. 678 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Caminetti v. United States*, 242 U.S. 470, 37 S. Ct. 192 (1917) . . . . . . . . . . . . . 26

*Coleman v. Miller*, 307 U.S. 433 (1939) . . . . . . . . . . . . . . . . . . . . . . . . .8

*Department of Commerce et al. v. United States House of Representatives et al.*, 525 U.S. 316 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Dollar General Corp. v. Mississippi Band of Choctaw Indians,* No. 13-496 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Eastland v. United States Serviceman's Fund,* 421 U.S. 491 (1975) . . . . . . . . . . 30

*Freytag v. Commissioner*, 501 U.S. 868 (1991) . . . . . . . . . . . . . . . . . . . . .19

*Friedrichs v. California Teachers Association*, No. 14-915 (2016) . . . . . . . . . . . .16

*Hawkins v. Community Bank of Raymore,* No. 14-520 (2016) . . . . . . . . . . . . . . .16

*In re: Aiken County, et al.*, 725 F.3d 255 (D.C. Circuit 2013) . . . . . . . . . . . . . .27

*INS v. Chadha*, 462 U.S. 919 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Liberation News Service v. Eastland*, 426 F.2d 1379 (2d Circuit 1970) . . . . . . . . 26

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . 7

*Marbury v. Madison*, 5 U.S. 137 (1803) . . . . . . . . . . . . . . . . . . . . . .20, 26, 27

*Morrison v. Olson,* 487 U.S. 654, 704-5 (1988) . . . . . . . . . . . . . . . . . . . . .28

*National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Circuit 1974) . . . .25

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Powell v. McCormack,* 395 U.S. 486 (1969) . . . . . . . . . . . . . . . 10, 25, 26, 28-32

*Public Citizen v. United States Department of Justice,* 491 U.S. 440 (1989). . . . . . . 28

*United States v. Ballin*, 144 U.S. 1 (1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*United States v. Helstoski*, 442 U.S. 477 (1979). . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Texas*, No. 15-673 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . .16

## CONSTITUTION, STATUTES AND RULES:

U.S. Constitution, Article I, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

U.S. Constitution, Article I, § 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

U.S. Constitution, Article I, § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S. Constitution, Article II, § 6. . . . . . . . . . . . . . . . . . . . . . . . . . . .29

U.S. Constitution, Article I, § 7. . . . . . . . . . . . . . . . . . . . . . . . . . . .23

U.S. Constitution, Article II, § 2 . . . . . . . . . . . . . . . . . . 1, 5, 13, 19, 20, 22

U.S. Constitution, Article III, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S. Constitution, Amendment XVII . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 21

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 11

28 U.S.C. § 1361. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1391. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1651. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 26

28 U.S.C. § 2201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 2202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Standing Rules of the Senate, Rule XXV. 113th Congress, 1st Session. Document 113-18. Revised to January 24, 2013. U.S. Government Printing Office. November 4, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . 6

Standing Rules of the Senate, Rule XXXI. 113th Congress, 1st Session. Document 113-18. Revised to January 24, 2013. U.S. Government Printing Office. November 4, 2013 . . . . . . . . . . . . . . . . . . . . . . . . .13

**OTHER:**

Aisch, Gregor; Keller, Josh; Lai, K.K. Rebecca and Yourish, Karen: "Supreme Court Nominees Considered in Election Years Are Usually Confirmed," *The New York Times*, updated 3/16/16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

American Bar Association, Status of Federal Judicial Vacancies, Nominations and Confirmations: 103rd – 113th Congress (1993-2014). http://www.americanbar.org/content/dam/aba/uncategorized/GAO/2014dec19_v acnomscons.authcheckdam.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . 18

American Bar Association, ABA Washington Letter, June 2016. http://www.americanbar.org/publications/governmental_affairs_periodicals/wash ingtonletter/2016/june/garland.html . . . . . . . . . . . . . . . . . . . . . . . .14

Cushman, John H., Jr.: "Senate Imperils Judicial System, Rehnquist Says." *New York Times,* January 1, 1998, A1. . . . . . . . . . . . . . . . . . . . . . . . . 24

Dinan, Stephen and Boyer, Dave: "Republicans rule out replacing Antonin Scalia until new president is elected." *The Washington Times*, February 13, 2016. . . . . .12

Fandos, Nicholas: "Garland Shouldn't Be Considered After Election, McConnell Says," *The New York Times* March 20, 2016. . . . . . . . . . . . . . . . . . . . . . .14

Grassley, Senator Chuck: Letter from Senator Grassley and Senate Judiciary Committee members to Senate Majority Leader McConnell, February 23, 2016. . . . . . . .12

McConnell and Grassley: "McConnell and Grassley: Democrats shouldn't rob voters of chance to replace Scalia." Op-Ed. *The Washington Post,* February 18, 2016 . . . . 12

McConnell, Senator Mitchell: Posting to Facebook page: https://www.facebook.com/mitchmcconnell/posts/1021148581257166 . . . . . 12

Obama, President Barack: "Merrick Garland Deserves a Vote—For Democracy's Sake." Op-Ed. *The Wall Street Journal,* July 17, 2016. . . . . . . . . . . . . . . . . . . . . . 24

Renzin, Lee: "Advice, Consent, and Senate Inaction - Is Judicial Resolution Possible?"  N.Y.U. Law Review, Volume 73:1739, Nov.1998. . . . . . . . .17, 19, 23, 32

Sutherland Statutory Construction, § 45:2. . . . . . . . . . . . . . . . . . . . . . . . .  26

United States Courts website ("Judicial Emergencies" listed under Judicial Vacancies): http://www.uscourts.gov/judges-judgeships . . . . . . . . . . . . . . . . 18

## STATEMENT OF THE CASE

Supreme Court Justice Antonin Scalia died on February 13, 2016. His death created a vacancy on the nine-member United States Supreme Court. On that same day Senate Majority Leader Mitchell McConnell issued a statement saying: "this vacancy should not be filled until we have a new President."

Ten days later, on February 23, 2016, eleven members of the Senate Judiciary Committee, constituting a majority of that Committee, signed a letter to Senator McConnell announcing their intent to "withhold consent on any nominee to the Supreme Court submitted by the President to fill Justice Scalia's vacancy." The members also stated that "this Committee will not hold hearings on any Supreme Court nominee until after our next President is sworn in on January 20, 2017."

Article II Section 2 of the United States Constitution states that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint... Judges of the supreme Court...." Pursuant to this provision, on March 16, 2016 President Barack Obama nominated Merrick Brian Garland, Chief Judge of the United States Court of Appeals for the District of Columbia Circuit, to fill the Supreme Court vacancy caused by the death of Justice Scalia. The Senate, by the statements of a small group of senators that control the Senate's consideration of judicial nominees, has made clear that it will not take any action on that nomination. And no action has been taken.

1

The Senate's refusal to even consider whether to provide "advice and consent" for a duly nominated justice for the Supreme Court has created a constitutional crisis that threatens the balance and separation of power among our three branches of government. The Senate's refusal has divested the President of his constitutional power to appoint justices to the Supreme Court, has divested individual senators and their constituents of each senator's right to evaluate and vote on whether to confirm a Supreme Court nominee, has compromised the viability and strength of the judiciary, and has disenfranchised United States citizens of the outcome of their votes for President and senator.

As of the date this Petition is filed, Judge Garland's nomination will have been pending longer than any other Supreme Court nominee in United States history. This situation is an emergency which necessitates prompt resolution because, unless remedied before the end of President Obama's term on January 20, 2017, his power to nominate and appoint judges to the Supreme Court during his four-year term will have been permanently foreclosed. This means the electorate that voted for President Obama in 2012 will have been forever deprived of an outcome of the election – which was to provide President Obama with all of the powers and duties of the Presidency for the entirety of his four-year term.  This also means that much of the electorate that voted for senators to represent them in Washington will have been forever divested of their representation, through their elected senators, on whether Judge Garland's nomination should be provided Senate advice and consent.

To remedy this peril, Petitioner requests that the Court determine that the Senate has a duty to decide whether to provide advice and consent for the nomination of Judge Garland, and also requests that the Court direct the Senate to promptly fulfill that duty.

## RELIEF SOUGHT

By this action, Petitioner seeks a *declaratory judgment* from the Court declaring that the Senate, as a body, has a non-discretionary constitutional duty to determine within a reasonable time whether to provide advice and consent to a nominee of the President to fill a vacancy on the Supreme Court.  Petitioner also asks the Court to issue a *writ of mandamus* directing Respondents to promptly fulfill, or cause the United States Senate to fulfill, its constitutional duty to determine whether to provide advice and consent to the appointment of Judge Merrick Brian Garland to the Supreme Court.

Petitioner is not requesting that the Court cause the Senate to *provide* its advice and consent, only that it cause the Senate to determine *whether* to provide advice and consent. In other words, Petitioner requests that the Court instruct Respondents that the Senate cannot ignore a presidential Supreme Court nominee.

No adequate remedy exists to resolve Respondents' refusal to undertake their constitutional duty other than the relief Petitioner requests from this Court.

## ISSUES PRESENTED

The primary issue which Petitioner asks this Court to determine is whether the United States Senate has a non-discretionary duty, under Article II Section 2 of the United States Constitution, to determine within a reasonable time whether to provide its advice and consent when the President of the United States duly nominates a person to fill a vacancy on the United States Supreme Court.

Petitioner also asks this Court to determine whether the Senate, by its refusal to consider the nomination of Judge Garland, has neglected that duty and must therefore be instructed to promptly undertake that determination.

## PARTIES AND STANDING

**Petitioner Steven S. Michel** is a United States citizen, a resident of Santa Fe County in New Mexico, and a registered voter in that county of New Mexico. In recent elections Petitioner has voted for President Barack Obama and for the current U.S. Senators representing New Mexico, Thomas Udall and Martin Heinrich.

**Respondent Addison Mitchell McConnell** is a duly elected United States Senator from the State of Kentucky, and leader of the majority party in the Senate. As Majority Leader, Senator McConnell is able to schedule or refuse votes of the full Senate. He has refused to allow a vote on whether the Senate should provide advice and consent for the nomination of Judge Garland.

**Respondent Charles Ernest Grassley** is a duly elected United States Senator from the State of Iowa, and Chairman of the Senate Judiciary Committee. Pursuant to the Standing Rules of the Senate, all judicial nominations are referred to the Judiciary Committee,[1] which then recommends to the full body whether it should provide advice and consent.  As Chairman, Senator Grassley has refused to allow the Committee to consider the Supreme Court nomination of Judge Garland.

**Respondent United States Senate** is the constitutional body of the United States government that must determine whether to provide advice and consent for nominees to the Supreme Court. The Senate has not, and by the statements of a small group of senators that control Senate responsibility, will not undertake this

---

[1] Standing Rules of the Senate, Revised 2013, Rule XXV.

constitutional duty with respect to the nomination of Judge Garland to the Supreme Court.

Petitioner has *standing* to bring this action. The situation which Petitioner requests be resolved is of "imperative constitutional necessity"[2] and has caused him, and others similarly situated, specific injury-in-fact which can be remedied only by the relief requested herein.[3]

Petitioner is filing this action on his own behalf and on behalf of all citizens of New Mexico who are similarly situated, and have had the effectiveness of their vote for United States senators diminished because those senators have been deprived of their ability to vote in the Senate with respect to the nomination of Judge Garland. This deprivation has caused Petitioner specific injury-in-fact of a nature recognized as sufficient to establish standing.

In *Department of Commerce et al. v. United States House of Representatives et al.*, a case involving the Constitution's Census Clause and voter standing, the Supreme Court found:

> Appellee Hoffmeister's expected loss of a Representative to the United States Congress undoubtedly satisfies the injury-in-fact requirement of Article III standing. In the context of apportionment, we have held that voters have standing to challenge an apportionment statute because "[t]hey are asserting

---

[2] *Nixon v. Fitzgerald*, 457 U.S. 731, 761 (1982) (Burger, C.J., concurring)

[3] These three factors: injury, causation and ability to redress, were established in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 573-4, 578 (1992).

'a plain, direct and adequate interest in maintaining the effectiveness of their votes.'"[4]

Other cases have confirmed the constitutionally-protected interest citizens and others have in protecting the effectiveness of their vote.[5]

The 17th Amendment of the United States Constitution states:

The Senate of the United States shall be composed of two Senators from each State, *elected by the people thereof*, for six years; and *each Senator shall have one vote*....

(Emphasis added).  This constitutional provision vests citizens with the right to vote for senators who are each to have one vote on Senate actions.

When a group of senators blocks Senate consideration of a Supreme Court nominee, and senators such as those representing Petitioner are prohibited from voting, Petitioner is deprived of the effectiveness of his constitutionally provided right to vote for senators.  This is not a diminution of voting power shared equally by all citizens, but is a disproportionate impairment to those citizens, such as Petitioner, who are not represented by the senators blocking Senate action.  Because Petitioner's senators have been prevented from voting on the nomination of Judge Garland, these senators have effectively lost their ability to represent the voters of New Mexico on the Garland nomination – and this has diminished the effectiveness

---

[4] *Department of Commerce et al. v. United States House of Representatives et al.*, 525 U.S. 316, 331-2 (1999)

[5] See, e.g. *Coleman v. Miller*, 307 U.S. 433, 438 (1939), where the U.S. Supreme Court discussed the right and privilege under the U.S. Constitution of state senators in Kansas to have their votes given effect.

of Petitioner's vote just as if he had no senator at all representing him in the Supreme Court nomination process.

Respondents' refusal to allow Senate consideration of Judge Garland's Supreme Court nomination has directly caused the injury suffered by Petitioner, and only the relief requested herein – causing the full Senate to decide whether it will provide advice and consent to the nomination of Judge Garland, will remedy this injury.

## JURISDICTION AND VENUE

The United States District Court for the District of Columbia has jurisdiction

over the present action pursuant to 28 U.S.C. §1331 (federal question jurisdiction),

28 U.S.C. §1361 (action to compel the performance of a duty), 28 U.S.C. §1651

(writs)[6], 28 U.S.C. §2201(the declaratory judgment act),[7] and 28 U.S.C. §2202

(further relief). Because granting this Petition will protect the power and function of

the federal judiciary, this action is *in aid of* this Court's jurisdiction. A determination

of the Senate's constitutional "advice and consent" role, and declaring what that role

is, is inherent in deciding the merits of this action.

This Court has subject matter jurisdiction because this action arises under the

Constitution.[8] A case "arises under" the Constitution if a claim "will be sustained if

the Constitution... [is] given one construction and will be defeated if given another."[9]

Petitioner's claim is that the Respondent Senators, and the Senate, have refused to

---

[6] 28 U.S.C. §1651: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law (emphasis added)."

[7] 28 U.S.C. §2201(a): "In a case of actual controversy within its jurisdiction..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such (emphasis added)."

[8] U.S. Constitution, Article III, §2

[9] *Bell v. Hood,* 327 U.S. 678, 685 (1946); *Powell v. McCormack,* 395 U.S. 486, 514 (1969)

perform a function that the Constitution requires them to do, and that this refusal has injured Petitioner and others.

Federal District Court for the District of Columbia is the proper venue. 28 U.S.C. § 1391, as amended, provides that a civil action in the nature of this Petition may be brought in the judicial district where the events or omissions giving rise to the claim took place. Respondent United States Senate is located within the District of Columbia, which is where the events and omissions took place. The offices of Respondents Senator McConnell and Senator Grassley are also within the District of Columbia.

## FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED

Justice Antonin Scalia died on February 13, 2016. His death created a vacancy on the nine-member[10] United States Supreme Court. On that same day Senate Majority Leader McConnell issued a statement saying: "The American people should have a voice in the selection of their next Supreme Court Justice. Therefore, this vacancy should not be filled until we have a new President."[11]

On February 23, 2016, eleven members of the Senate Judiciary Committee, constituting a majority of that Committee, signed a letter to Senate Majority Leader McConnell stating their intent to "withhold consent on any nominee to the Supreme Court submitted by the President to fill Justice Scalia's vacancy." Those members also stated that "this Committee will not hold hearings on any Supreme Court nominee until after our next President is sworn in on January 20, 2017."[12]  By Senate rules, the Judiciary Committee provides recommendations to the full Senate on

---

[10] 28 U.S.C. §1

[11] https://www.facebook.com/mitchmcconnell/posts/1021148581257166; see also "Republicans rule out replacing Antonin Scalia until new president is elected," by Stephen Dinan and Dave Boyer, *The Washington Times*, February 13, 2016; "McConnell and Grassley: Democrats shouldn't rob voters of chance to replace Scalia" by Mitch McConnell and Chuck Grassley, *The Washington Post*, February 18, 2016.

[12] The letter is attached as an Exhibit to this Petition

judicial nominees *before* those nominees are considered by the Senate. [13] In other words, the refusal identified in the February 23rd letter precludes Senate action, ever, on President Obama's nominee, and divests the President of his appointment power for the remainder, nearly one-fourth (11 months), of his four-year term.

On March 16, 2016 President Barack Obama nominated Merrick Brian Garland, Chief Judge of the United States Court of Appeals for the District of Columbia Circuit, to fill the Supreme Court vacancy caused by the death of Justice Scalia. The President's nomination was pursuant to Article II Section 2 of the United States Constitution, which provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint... Judges of the supreme Court...."

On March 20, 2016, in a widely reported statement, Senate Majority Leader McConnell re-affirmed that the Senate would never consider President Obama's nomination of Judge Garland, and would instead await a nomination from an as-yet-

---

[13]  The Senate Judiciary Committee recommends to the full body whether the Senate should advise and consent to a nomination by the President to fill a Supreme Court vacancy. Rule XXXI of the Standing Rule of the Senate (Rev. 2013) states: "When nominations shall be made by the President of the United States to the Senate, they shall, unless otherwise ordered, be referred to appropriate committees; and the final question on every nomination shall be, 'Will the Senate advise and consent to this nomination?'"

to-be-elected President: "The principle is the American people are choosing their next president, and their next president should pick this Supreme Court nominee."[14]

On June 21, 2016, the American Bar Association Standing Committee on the Federal Judiciary, after a months-long investigation, unanimously gave Judge Garland its highest rating of "Well-Qualified." In its June of 2016 newsletter, following the release of its rating, ABA President Paulette Brown was quoted as saying:

> It is now imperative that the Senate fulfills its constitutional responsibilities to consider and act promptly on the Supreme Court nominee. While the Court continues to function, its 4-4 decisions do not establish precedent and leave open questions on issues that are vital to the lives of everyday people.[15]

As of August 15, 2016, Judge Garland's Supreme Court nomination had awaited Senate action for 153 days – representing the longest time for such a nomination in United States history. Prior to Judge Garland, the average time for a Supreme Court nominee to be either confirmed, rejected or withdrawn was 25 days. The longest confirmation process to date, prior to Judge Garland, was 125 days for Justice Brandeis in 1916. By January 20, 2017, when President Obama's term ends,

---

[14] See, e.g. "Garland Shouldn't Be Considered After Election, McConnell Says," by Nicholas Fandos, *The New York Times* March 20, 2016.

[15] http://www.americanbar.org/publications/governmental_affairs_periodicals/washingtonletter/2016/june/garland.html

Judge Garland's nomination will have awaited Senate action for 311 days, by far the

longest for any Supreme Court nominee in American history.[16]

---

[16] "Supreme Court Nominees Considered in Election Years Are Usually
Confirmed," *The New York Times,* by Gregor Aisch, Josh Keller, K.K. Rebecca Lai and
Karen Yourish, updated March 16, 2016

## THE HARM CAUSED BY THE SENATE'S REFUSAL TO ACT

The Senate's refusal to undertake its role of advice and consent is a result of the obstruction of Respondent Senate Majority Leader McConnell, Respondent Judiciary Committee Chairman Grassley and eleven (11) members of the Senate Judiciary Committee that have blocked Committee action. In addition to the injuries caused to Petitioner and others as explained earlier, Respondents' refusal to consider the nomination of Judge Garland has and will adversely and impermissibly impact all three branches of the federal government:

(1) the President is deprived of his power to appoint judges to the United States Supreme Court;

(2) the Senate is unable to fulfill its "advice and consent" role in the judicial appointment process because senators are not allowed to vote on whether to provide advice and consent; and

(3) the Supreme Court is deprived of its statutorily-prescribed nine justices,[17] creating a situation where the Court is unable to resolve important issues and establish a uniform system of laws throughout the United States.

The lack of nine members on the Supreme Court has had a critical and adverse effect on the Court's ability to perform its responsibilities. Four important cases on the Supreme Court's 2016 docket were decided by default as a result of a 4-4 tie, which has the effect of affirming the lower court judgment.[18] When the Circuit courts disagree, the Supreme Court must be able to resolve those disputes in

---

[17] 28 U.S.C. §1

[18] *United States v. Texas*, No. 15-673; *Dollar General Corp. v. Mississippi Band of Choctaw Indians*, No. 13-496; *Friedrichs v. California Teachers Association*, No. 14-915; *Hawkins v. Community Bank of Raymore*, No. 14-520.

order to provide a uniform system of laws throughout the United States. Otherwise, citizens may have different speech, due process and other rights depending on where in the United States they live.

In addition, as a result of the Senate's refusal to act on the nomination of Judge Garland, citizens of the United States are denied a voting record for their senators. A voting record for senators is essential to enable citizens to exercise their role as informed electors in a representative government.[19]

Finally, it is important to recognize that the refusal to act on the Garland nomination is the culmination of a trend over the years in which the Senate has neglected its advice and consent role for judicial nominations by delay and inaction. That trend should be halted and reversed in order to avoid further degradation of the judiciary.

According to the Administrative Office of the U.S. Courts, judicial vacancies have been increasing to the point where, as of August 15, 2016, there were a total of 92 judicial vacancies in the federal court system, and 57 nominations pending. There are currently 31 "judicial emergencies" in the United States due to the Senate's delay, neglect and obstruction of the judicial nomination and appointment process. A "judicial emergency" in federal court is a situation in which the courts are

---

[19] "Advice, Consent, and Senate Inaction – Is Judicial Resolution Possible?" by Lee Renzin, N.Y.U. Law Review, Volume 73:1739, November 1998 at 1747-8.

unable to keep pace with the cases before them. [20]According to the American Bar

Association, the number of judicial vacancies existing at the end of the current 114th

Congress will be among the highest ever.[21]

---

[20] http://www.uscourts.gov/judges-judgeships; For Circuit Courts, it is defined as
"any vacancy in a court of appeals where adjusted filings per panel are in excess of 700;
or any vacancy in existence more than 18 months where adjusted filings are between 500
to 700 per panel." For District Courts it is defined as "any vacancy where weighted
filings are in excess of 600 per judgeship; or any vacancy in existence more than 18
months where weighted filings are between 430 to 600 per judgeship; or any court with
more than one authorized judgeship and only one active judge.

[21]http://www.americanbar.org/content/dam/aba/uncategorized/GAO/2014dec19_v
acnomscons.authcheckdam.pdf

# ARGUMENT

## THE COURT SHOULD ISSUE A DECLARATORY JUDGMENT AND WRIT OF MANDAMUS TO REMEDY THE SENATE'S FAILURE TO PERFORM ITS CONSTITUTIONAL DUTY

When the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide advice and consent. By its refusal to consider the nomination of Judge Garland, the Senate has neglected its constitutional duty and should be required to promptly undertake that determination.

I.    <u>When the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide its advice and consent.</u>

The subject matter of this Petition implicates the powers and duties of all three branches of the federal government. A New York University Law Review article on this subject in 1998 noted:

> A trifurcated government structure is arguably the most remarkable creation of the Framers. It was designed both to enhance the functioning of each branch and to prevent the aggrandizement of power by one branch. When, throughout the course of the nation's existence, breakdowns in that system have arisen, the Supreme Court has intervened to restore the system to its proper balance [citations omitted].[22]

The President and the Senate share the power and duty to fill vacancies on the Supreme Court. The United States Constitution, Article II Section 2, establishes

---

[22] Renzin, "Advice, Consent…,"at 1751-2; see also *Freytag v. Commissioner*, 501 U.S. 868, 878 (1991)

the process by which Supreme Court vacancies are filled:  the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Judges of the supreme Court...." To the extent there is ambiguity as to what the "advice and consent" role of the Senate requires, "[i]t is emphatically the province and duty of the judicial department to say what the law is."[23] Petitioner submits that the Senate's role, at a minimum, requires a determination by the Senate - as a body - of whether to provide or withhold the "advice and consent" necessary for the President to appoint a Supreme Court nominee.

The Constitution's language in Article II Section 2 establishes the inter-dependent roles of the President and Senate in the process of filling vacancies on the Supreme Court. The President shall nominate, *and by and with* the Senate's advice and consent, shall appoint. When read in its entirety, Article II Section 2 clarifies that the appointment of justices to the Supreme Court is a power and duty *jointly* vested in the President and the Senate. This clarity comes from the final clause of that section which states that, unlike the Supreme Court, the appointment of other officers may, by law, vest in the President *alone*:

> ...[the President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint... Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: <u>but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone</u>, in the Courts of Law, or in the Heads of Departments. (Emphasis added)

---

[23] *Marbury v. Madison,* 5 U.S. 137, 177 (1803)

When the Senate is procedurally blocked from deciding whether to provide "advice and consent" for a Presidential nominee, the constitutional process breaks down and the President is divested of his power to appoint. Taken to its logical conclusion, if the Senate entirely neglected its advice and consent role, the judicial branch of government would be of no consequence,[24] and eventually eliminated. In order to protect the viability of the judiciary and the power of the President, the Senate *must decide* whether to provide or withhold advice and consent. To presume as Respondents do, that the Senate, obstructed by a small group of senators, can ignore its advice and consent role with respect to nominees of a particular President, is to also presume that the Senate can eliminate the judiciary and the constitutional appointment powers of the President. That does not make sense.

An issue before this Court is whether the Senate's inaction with respect to Judge Garland has crossed the line, from a permissible management of Senate business,[25] to an impermissible abrogation of its constitutional duty. Petitioner contends that the Senate's outright refusal to even consider the President's nominee, as evidenced by the Senate Judiciary Committee letter and the statements of Leader McConnell, crosses that line and must be redressed. The Senate's refusal compromises the viability of the judiciary and the power of the presidency. In *United*

---

[24] The Supreme Court must have at least six (6) justices to constitute a quorum. 28 U.S.C. §1

[25] U.S. Constitution, Article I, § 5: "Each House may determine the Rules of its Proceedings…"

*States v. Ballin,* the Court found that the "[C]onstitution empowers each house to determine its rules of proceedings. It may not by its rules ignore constitutional restraints or violate fundamental rights."[26]

The advice and consent role is not a function that a select group of senators, be it a majority of the Senate Judiciary Committee, the Chairman of that Committee, or the Senate Majority Leader, can block the Senate from performing.  The Senate acts by a vote of its members, with each Senator having one vote.[27] Obstruction by an individual senator or group of senators is not a Senate action. And the appointment of judges to the Supreme Court requires the *Senate* to determine whether it will provide advice and consent.[28]

It is also important to recognize that Respondents' blocking of Senate action has effectively reduced the number on the Supreme Court from nine to eight – at least for the time during which no nomination would be considered. This type of *de facto* one-house repeal of legislation establishing the size of the judiciary violates the constitutional requirements of bicameralism (2 houses) and presentment (to the President for signature) for laws to take effect.[29]

---

[26] *United States v. Ballin*, 144 U.S. 1, 5 (1892)

[27] U.S. Constitution, Article I, §3:"each Senator shall have one Vote."

[28] U.S. Constitution, Article II, §2

[29] U.S. Constitution, Article 1, §1; §7, cl.3; *INS v. Chadha*, 462 U.S. 919, 952, 957-9 (1983)

As was stated in an N.Y.U. Law Review article by Lee Renzin in 1998:

> The characteristics of the Senate that ostensibly enable it to make a vital contribution to the appointment process are rendered moot when the full Senate does not vote on nominees. This phenomenon does not comport with the Framers' desire that "advice and consent" – an integral component of the system of separation of powers – be implemented in a manner that would foster that balance…. In addition, the prospect of the Senate having the unilateral ability to dismantle the federal judiciary without a "check" – either by the people, through procedures designed to ensure accountability, or by the full Congress and the President, via bicameralism and presentment – is one which raises serious separation of power concerns. Simply put, Senators not only are infringing on the power of the other two branches, but they are doing so in a manner that robs the public of an opportunity to determine how their particular Senator feels about the nominees that reach the Senate. [30]

Recently, in a Wall Street Journal opinion article, President Obama explained the constitutional crisis that the country is facing, and the threat it poses to the balance of power among the three branches of government. He discussed that if a group of senators

> refuse even to consider a nominee in the hopes of running out the clock until they can elect a president from their own party, so that he can nominate his own justice to the Supreme Court, then they will effectively nullify the ability of any president from the opposing party to make an appointment to the nation's highest court. They would reduce the very functioning of the judicial branch of the government to another political leverage point.

> We cannot allow the judicial confirmation process to descend into an endless cycle of political retaliation. There would be no path to fill a vacancy for the highest court in the land. The process would stall. Court backlogs would grow. An entire branch of government would be unable to fulfill its constitutional

---

[30] (citations omitted); Renzin, "Advice, Consent…," at 1757

role. And some of the most important questions of our time would go unanswered.[31]

In 1998, in response to the slowing of the judicial confirmation process, former Chief Justice Rehnquist noted, "[t]he Senate is surely under no obligation to confirm any particular nominee, but after the necessary time for inquiry, it should vote him up or vote him down."[32] In the present case, we are not just dealing with a slowing, we are dealing with a complete stoppage. A select group of senators has prevented the Senate from performing its constitutional function, determining that they would *never* consider a nominee of President Obama.

Petitioner therefore requests that the Court remedy this undoing of our system of government, and the injury to Petitioner and others similarly situated, by instructing the Senate, and instructing the Respondent senators to cause the Senate, to promptly consider and determine whether to provide advice and consent to the nomination of Judge Garland as a justice of the Supreme Court.  In addition, Petitioner asks this Court to declare that, when a President nominates a justice to the Supreme Court, the Senate has a non-discretionary duty to undertake the "advice and consent" process within a reasonable time.

---

[31] "Merrick Garland Deserves a Vote—For Democracy's Sake," by Barack Obama, President of the United States, *The Wall Street Journal,* July 17, 2016.

[32] "Senate Imperils Judicial System, Rehnquist Says," by John H. Cushman, Jr., *New York Times,* January 1, 1998, A1

II.    <u>The Senate, by its refusal to consider the nomination of Judge Garland, has
       violated its constitutional duty and therefore should be required to
       promptly undertake that determination.</u>

When a small group of senators, as is the case here, procedurally prevents the

Senate from undertaking its constitutional role of advice and consent for a Supreme

Court nominee, there is an adverse impact to all three branches of government and

this Court may issue both a declaratory judgment and a writ of mandamus to right

the situation. The action presented by this Petition is justiciable, and is not barred

by either the Speech or Debate Clause of the United States Constitution or the

Political Question Doctrine.

This Court has the power to provide *declaratory* relief in situations involving

the other branches of government. In *National Treasury Employees Union v. Nixon,*

the District of Columbia Circuit declared that the President had a constitutional duty

to comply with the law. In that case, the Court viewed declaratory relief as a

mechanism to provide relief without disrupting the balance of power.[33] Similarly, in

*Powell v McCormack,* the Supreme Court determined that a federal "court may grant

declaratory relief even though it chooses not to issue an injunction or mandamus....

A declaratory judgment can then be used as a predicate to further relief, including

an injunction."[34]  In *Powell*, the Court declared that the House of Representatives

lacked the power to refuse to seat a duly elected Representative from New York.[35]

---

[33] *National Treasury Employees Union v. Nixon,* 492 F.2d 587, 616 (D.C. Circuit
1974)

While there is case law holding that courts may not issue a *writ of mandamus* against Congress,[36] the issue is unsettled and Petitioner submits that the current situation warrants that form of extraordinary relief. 28 U.S.C. Section 1651(a) provides that the "Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The plain language[37] of this statute encompasses mandamus actions against senators and the Senate.

In the landmark case of *Marbury v. Madison,* Justice Marshall described the history and use of writs of mandamus, and wrote:

> [T]he case of *The King v. Baker et al.* states with much precision and explicitness the cases in which the writ may be used. "Whenever," says the very able judge, "there is a right to execute an office, perform a service, or exercise a franchise (more especially if it be a matter of public concern or attended with profit), and a person is kept out of possession, or dispossessed of such right, and has no other specific legal remedy, this court ought to assist by mandamus, upon reasons of justice, as the writ expresses, and upon reasons of public policy, to preserve peace, order and good government." In the same case, he says, "this writ ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one."[38]

---

[34] *Powell v. McCormack*, 395 U.S. 486, 499 (1969)

[35] Ibid. at 550

[36] See, e.g. *Liberation News Service v. Eastland*, 426 F.2d 1379, 1384 (2d Circuit 1970)

[37] "Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise" §45:2 Sutherland Statutory Construction. See also, *Caminetti v. United States*, 242 U.S. 470, 37 S. Ct. 192 (1917)

[38] *Marbury v. Madison*, 5 U.S. 137, 168-9 (1803)

The circumstances described in Justice Marshall's opinion, a right to execute an office, in a "matter of public concern," with no other legal remedy, apply to the situation now before the Court, and weigh in favor of the Court exercising its authority to provide a remedy to preserve "justice and good government."

Moreover, in extraordinary cases the federal courts have issued mandamus against other branches of government when they neglected a clear statutory duty. In *In re Aiken County, et al.,* the D.C. Circuit Court of Appeals held, in granting a petition for a writ of mandamus against the Executive Branch, that:

> Our analysis begins with settled, bedrock principles of constitutional law. Under Article II of the Constitution and relevant Supreme Court precedents, the President must follow statutory *mandates* so long as there is appropriated money available and the President has no constitutional objection to the statute.
>
> * * * *
>
> This case has serious implications for our constitutional structure. It is no overstatement to say that our constitutional system of separation of powers would be significantly altered if we were to allow executive and independent agencies to disregard federal law in the manner asserted in this case....[39]

Unlike other situations, where mandamus could be viewed as compromising the separation of power, in the situation at hand Petitioner seeks to employ mandamus to *restore* the separation of power. Justice Kennedy has said that "It remains one of the most vital functions of this Court to police with care the

---

[39] In *In re: Aiken County, et al.*, 725 F.3d 255,259 and 266-7 (D.C. Circuit 2013), the U.S. Court of Appeals - D.C. issued a writ of mandamus against the executive branch, specifically the Nuclear regulatory Commission, compelling it to proceed with a legally mandated licensing process.

separation of the governing powers."[40] In his dissent in *Morrison v. Olson,* Justice Scalia argued that, in the context of a separation of powers challenge to an action of Congress, the Court does *not* owe Congress the same level of deference that would be afforded when reviewing legislation.[41]

Finally, this action is justiciable, and is not barred by either the Speech or Debate Clause of the Constitution or the Political Question Doctrine.

A.  <u>Justiciability</u>

In *Powell v. McCormack* the Supreme Court was asked to declare whether a duly elected member of the House of Representatives, Adam Clayton Powell, Jr. was unconstitutionally denied his seat.  Among the preliminary requirements for the case to proceed was a determination that the case was "justiciable." In *Powell* the Court determined that it was, and went on to find that the House of Representatives was without power to exclude Powell. Similarly, this Petition is justiciable.

In deciding whether a claim is justiciable, two findings must be made: 1) that "the duty asserted can be judicially identified and its breach determined," and 2) that an effective remedy can be fashioned.[42]  Petitioner has asked this Court to determine that the Senate has a non-discretionary duty to determine whether it will

---

[40] *Public Citizen v. United States Department of Justice,* 491 U.S. 440, 468 (1989) (Kennedy, J. concurring)

[41] *Morrison v. Olson,* 487 U.S. 654, 704-5 (1988) (Scalia, J., dissenting)

[42] *Baker v. Carr,* 369 U.S. 186, 198 (1962)

provide advice and consent to the Supreme Court nomination of Judge Garland, and
that the Senate has breached that duty. Petitioner requests that the Court grant both
mandamus and declaratory relief to remedy that breach of duty. Granting that relief
would cause the Senate to consider Judge Garland's nomination and would remedy
the situation. In *Powell,* the Court determined that declaratory relief satisfied the
justiciability requirement.[43]

### B.   Speech or Debate Clause

The Speech or Debate Clause of the United States Constitution, Article I,
Section 6, provides that "for any Speech or Debate in either House, [senators or
representatives] shall not be questioned in any other Place."

The Speech or Debate Clause does not bar this action against Respondent
Senators McConnell and Grassley. That clause only provides protection from
lawsuits against legislators resulting from "words spoken in debate… [c]ommittee
reports, resolutions, and the act of voting… [and] things done generally in a session
of the House by one of its members in relation to business before it.'"[44] Petitioner
submits that the *refusal to act* by a handful of senators, in order to procedurally
prevent the Senate from performing its duty to participate in the judicial

---

[43] *Powell* at 516-18
[44] *Powell* at 502

appointment process for Supreme Court justices, is not an activity "done generally"
by senators "in relation to business before" them.

In addition, the Speech or Debate Clause does not apply to a *refusal* to act: "it
is clear from the language of the Clause that protection extends only to an act that
has already been performed."[45]

However, even if this Court disagrees and determines that the Speech or
Debate Clause bars this action against Senator McConnell and Senator Grassley, the
Court may still review the propriety of, and act on, the *Senate's* failure to participate
in the Supreme Court judicial nomination and appointment process. The Speech or
Debate Clause applies only to individuals and does not apply to an action against the
Senate.[46]  It is also important to note that, in *Powell,* the Court left open the question
of whether the Speech or Debate Clause would bar an action against individual
members of Congress if no other remedy was available.[47]

C.  Political Question Doctrine

The premise underlying the Political Question Doctrine is the desire to
prevent federal courts from deciding policy issues. This doctrine "helps to preserve
the separation of powers by ensuring that courts do not overstep their bounds."[48]

---

[45] *United States v. Helstoski*, 442 U.S. 477, 490 (1979)

[46] *Powell* at 505-6; see also *Eastland v. United States Serviceman's Fund,* 421
U.S. 491, 513 (1975) (Marshall, J. concurring)

[47] *Powell* at note 26

The action here does not invoke a "political question," but rather an interpretation as to whether the Constitution requires the Senate to determine if it will provide advice and consent for Supreme Court nominations. In *Baker* the Court determined that legislative apportionment is not a political question, and therefore is appropriate for judicial review. Similarly, in *Powell*, the Court decided that it could determine whether the House of Representatives properly refused to seat a duly elected and constitutionally qualified member, and found it was improper.

In the current situation, Petitioner is asking the Court to determine that the Senate, i.e. all senators, must be allowed to vote on whether to provide "advice and consent" for a duly nominated Supreme Court justice. The Senate acts by voting, and the "advice and consent" role must be carried out by *the Senate,* and not be blocked by one senator or a group of senators less than a majority. To cause the Senate to not even consider a nominee duly presented to it undermines the foundational framework of our government, and denies Petitioner the full value of his vote for United States senators and President.

In determining that there was no political question barring the courts from deciding the *Powell* case, the court defended its established role:

> Our system of government requires the federal courts on occasion to interpret the Constitution in a manner at variance with the construction given the document by another branch. The alleged conflict that such an adjudication may cause cannot justify the courts' avoiding their constitutional responsibility.... [I]t is the responsibility of this Court to act as the ultimate

---

[48] See *Baker v. Carr*, 369 U.S. 186, 210 (1962)

interpreter of the Constitution. *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 2 L. Ed. 60 (1803).[49]

Eighteen years ago, in a law review article discussing the Senate's abrogation of its duty to timely consider judicial nominees, the author concluded:

> Over the past two centuries, the importance of the federal judiciary's role in the nation's framework has increased markedly, to a position surely even beyond the vision of President Washington [citation omitted]. The integrity and efficiency with which the judiciary carries out that role, however, is being jeopardized by the Senate's failure to fulfill its constitutionally mandated duties to provide advice and consent with respect to presidential nominations for federal judgeships. A judicial remedy ought to be available to respond to this threatening situation.[50]

The situation today is worse, and a judicial remedy is imperative.

---

[49] *Powell* at 549.
[50] Renzin, "Advice, Consent…," at 1787

## CONCLUSION

WHEREFORE, for the foregoing reasons, Petitioner prays for 1) an order declaring that the Senate, as a body, has a constitutional duty to determine within a reasonable time whether it will provide advice and consent to a nominee of the President to fill a vacancy on the Supreme Court, 2) a writ of mandamus directing Respondents to promptly fulfill, or cause the Senate to fulfill, its constitutional duty to determine whether it will provide advice and consent to the appointment of Judge Merrick Brian Garland to the Supreme Court, and 3) such other and further relief as the Court deems just and proper.

Dated: August 25, 2016

Respectfully submitted,

STEVEN S. MICHEL, *pro se*
New Mexico Bar #1809
2025 Senda de Andres
Santa Fe, NM 87501
(505) 690-8733
stevensmichel@comcast.net

EXHIBIT

CHARLES E. GRASSLEY, IOWA, CHAIRMAN

ORRIN G. HATCH, UTAH
JEFF SESSIONS, ALABAMA
LINDSEY O. GRAHAM, SOUTH CAROLINA
JOHN CORNYN, TEXAS
MICHAEL S. LEE, UTAH
TED CRUZ, TEXAS
JEFF FLAKE, ARIZONA
DAVID VITTER, LOUISIANA
DAVID A. PERDUE, GEORGIA
THOM TILLIS, NORTH CAROLINA

PATRICK J. LEAHY, VERMONT
DIANNE FEINSTEIN, CALIFORNIA
CHARLES E. SCHUMER, NEW YORK
RICHARD J. DURBIN, ILLINOIS
SHELDON WHITEHOUSE, RHODE ISLAND
AMY KLOBUCHAR, MINNESOTA
AL FRANKEN, MINNESOTA
CHRISTOPHER A. COONS, DELAWARE
RICHARD BLUMENTHAL, CONNECTICUT

KOLAN L. DAVIS, Chief Counsel and Staff Director
KRISTINE LUCIUS, Democratic Chief Counsel and Staff Deputy

**United States Senate**

COMMITTEE ON THE JUDICIARY

WASHINGTON, DC 20510-6275

February 23, 2016

The Honorable Mitch McConnell
Senate Majority Leader
United States Senate
Washington, DC 20510

Dear Majority Leader McConnell,

As we write, we are in the midst of a great national debate over the course our country will take in the coming years. The Presidential election is well underway. Americans have already begun to cast their votes. As we mourn the tragic loss of Justice Antonin Scalia, and celebrate his life's work, the American people are presented with an exceedingly rare opportunity to decide, in a very real and concrete way, the direction the Court will take over the next generation. We believe The People should have this opportunity.

Over the last few days, much has been written about the constitutional power to fill Supreme Court vacancies, a great deal of it inaccurate. Article II, Section 2 of the Constitution is clear. The President may nominate judges of the Supreme Court. But the power to grant, *or withhold*, consent to such nominees rests exclusively with the United States Senate. This is not a difficult or novel constitutional question. As Minority Leader Harry Reid observed in 2005, "The duties of the Senate are set forth in the U.S. Constitution. Nowhere in that document does it say the Senate has a duty to give the Presidential nominees a vote. It says appointments shall be made with the advice and consent of the Senate. That is very different than saying every nominee receives a vote."

We intend to exercise the constitutional power granted the Senate under Article II, Section 2 to ensure the American people are not deprived of the opportunity to engage in a full and robust debate over the type of jurist they wish to decide some of the most critical issues of our time. Not since 1932 has the Senate confirmed in a presidential election year a Supreme Court nominee to a vacancy arising in that year. And it is necessary to go even further back — to 1888 — in order to find an election-year nominee who was nominated and confirmed under divided government, as we have now.

Accordingly, given the particular circumstances under which this vacancy arises, we wish to inform you of our intention to exercise our constitutional authority to withhold consent on any nominee to the Supreme Court submitted by this President to fill Justice Scalia's vacancy. Because our decision is based on constitutional principle and born of a necessity

The Honorable Mitch McConnell
Page Two

to protect the will of the American people, this Committee will not hold hearings on any Supreme Court nominee until after our next President is sworn in on January 20, 2017.

Sincerely,

Charles E. Grassley
Chairman, Senate Judiciary Committee

Orrin G. Hatch
United States Senator

Jeff Sessions
United States Senator

Lindsey O. Graham
United States Senator

John Cornyn
United State Senator

Michael S. Lee
United States Senator

Ted Cruz
United States Senator

Jeff Flake
United States Senator

The Honorable Mitch McConnell
Page Three

David Vitter
United States Senator

David A. Perdue
United States Senator

Thom Tillis
United States Senator

## AFFIDAVIT

CITY OF WASHINGTON   )
          )
DISTRICT OF COLUMBIA  )

I, the undersigned, upon being duly sworn, state the following:

My name is Steven S. Michel and I am the Petitioner. I am capable of making this affidavit, and the facts contained in this affidavit are true and correct to the best of my knowledge and belief. I have read the foregoing *Emergency Petition for Declaratory Judgment and Writ of Mandamus (Petition),* and the facts stated within it are true and correct, and the letter attached as an exhibit to the *Petition* is a true and correct copy of the original.


Further Affiant sayeth not.

              STEVEN S. MICHEL

Subscribed and sworn to before me this 25th day of August, 2016.

       DAVID GOODMAN
      Notary Public of District of Columbia
      My Commission Expires July 14, 2021

          My commission expires July 14, 2021



38

## CERTIFICATE OF SERVICE

I hereby certify that on this __25__ day of August, 2016, I served the foregoing

*Emergency Petition for Declaratory Judgment and Writ of Mandamus* by placing a

true copy in the United States mail, with certified delivery, to the following:

Loretta E. Lynch,
Attorney General of the United States
Office of the Attorney General – U.S. Department of Justice
1350 Pennsylvania Avenue, NW #409
Washington, D.C. 20004

United States Attorney's Office
Civil Process Clerk
555 Fourth Street, NW
Washington, D.C. 20530

United States Senate
Dirksen Senate Office Building
Washington, D.C. 20510

Office of Senator Addison Mitchell McConnell
United States Senate
Washington, D.C. 20510

Office of Senator Charles Ernest Grassley
United States Senate
Washington, D.C. 20510

Steven S. Michel