# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN S. MICHEL, *pro se*                  ) | |
|                 *Plaintiff,*    ) | |
|    **v.**                                   ) | |
|                                     ) | |
| **ADDISON MITCHELL MCCONNELL, JR.,**   ) | Civil Action No.: 16-1729 (RC) |
| **CHARLES ERNEST GRASSLEY, and**      ) | |
| **UNITED STATES SENATE,**              ) | **Oral Argument Requested** |
|                 *Defendants.*    ) | |
| _____) | |

## MOTION FOR PRELIMINARY INJUNCTION

COMES NOW Plaintiff Steven S. Michel, *pro se,* and for his *Motion for Preliminary Injunction,* states the following:

1.      On September 6, 2016 I filed a *Motion* to establish a response time and schedule for this case. That *Motion* was denied on October 11, 2016. Along with that denial, however, the Court instructed Defendants to respond to the *Petition* on or before November 25, 2016 and, recognizing the "time-sensitive" nature of the claims therein, indicated that an extension of the November 25, 2016 date was unlikely.

2.      As stated in both the *Petition* and September 6ᵗʰ *Motion*, it is important that this matter be resolved in a time frame that permits any remedy to be meaningful and useful. Unless the Senate, as a body, considers and determines whether to provide advice and consent for Judge Garland's Supreme Court nomination before it adjourns in

December, Plaintiff's vote for President and senators will have been rendered meaningless with regard to an important judicial nomination during the term of President Obama.

3.     The 114th Congress is scheduled to permanently adjourn December 16, 2016, after which Judge Garland's nomination cannot be considered by this Congress. While the December 16th adjournment may perhaps be extended until the end of 2016, the urgency of the situation exists regardless.  According to online information from the United States Senate website, for the remainder of the 114th Congress the Senate is scheduled to be in session only the week of November 14, 2016, and the three weeks between November 28, 2016 and December 16, 2016. That leaves very little time for the Senate to act.

4.     Because of the urgency of the situation which is the subject of my *Petition*, and my belief that the facts necessary to render a decision are uncontested, I request that the Court, pursuant to Fed. R. Civ. P. No. 65(a), issue a preliminary injunction requiring the Senate to vote to determine whether to provide its advice and consent to Judge Garland's U.S. Supreme Court nomination, before the 114th Congress adjourns at the end of the year.

5.     I recognize that the Court may need time after the November 25th responses are filed to decide the merits of the *Petition* and grant appropriate relief in the nature of a declaratory judgment and/or mandamus. The Constitutional issues raised are very important. Nevertheless, unless the Senate acts to vote on Judge Garland's nomination before the end of the year, I will have been irreparably harmed with respect to that nomination and appointment process. Requiring a Senate vote on Judge Garland's

nomination before the end of the year, however, will do no harm to the rights of any person, nor compromise the public interest. The full Senate is fully entitled to vote Judge Garland's nomination up or down, as it chooses.

6.      Unless a preliminary injunction is granted in this case it will be difficult or impossible for the Court to resolve this case in a time-frame that protects my rights as a voter under the 17th Amendment.

7.      A *Memorandum of Points and Authorities* accompanies this *Motion*, along with an affidavit. The *Memorandum of Points and Authorities* includes many of the arguments found in my *Petition*, but also includes updated facts, some additional authority regarding standing, and discussion and reference to the *Federalist Papers.*

8.      As required by Rule 65(a)(1), I have provided notice to Defendants as indicated in the attached Certificate of Service. As a courtesy I have also emailed the *Motion* and *Memorandum of Points and Authorities* to the United States Attorney and United States Senate counsel, also as indicated by the Certificate of Service. I telephonically notified both of these offices, and the office of Judge Contreras, of my intent to file this *Motion* one day prior.

9.      Finally, I request that the Court determine that the security amount required by Rule 65(c) should be zero because no significant costs and damages will be sustained by Defendants if the injunction is issued and later turns out to be wrongly imposed.

10.     Oral argument is requested.  A proposed form of order is attached to this *Motion*.


WHEREFORE, for the foregoing reasons, Plaintiff prays for a Court order issuing a preliminary injunction  that 1) requires Senator McConnell to schedule a vote of the full Senate, before the 114th Congress adjourns, on whether to provide advice and consent for the nomination of Judge Merrick Garland to the United States Supreme Court, 2) requires Senator Grassley to hold any necessary Judiciary Committee hearings prior to the vote of the full Senate on the Garland nomination, and 3) requires that the Senate, as a body, vote before the end of the 114th Congress on whether the Senate will provide its advice and consent to the nomination of Judge Garland to the United States Supreme Court.


Respectfully submitted,

_____
STEVEN S. MICHEL, *pro se*
2025 Senda de Andres
Santa Fe, New Mexico 87501
(505) 690-8733
stevensmichel@comcast.net

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STEVEN S. MICHEL,** *pro se* | ) | |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | |
| **ADDISON MITCHELL MCCONNELL, JR.,** | ) | Civil Action No.: 16-1729 (RC) |
| **CHARLES ERNEST GRASSLEY, and** | ) | |
| **UNITED STATES SENATE,** | ) | <u>**Oral Argument Requested**</u> |
| *Defendants.* | ) | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>
<u>**IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**</u>

STEVEN S. MICHEL, *pro se*
New Mexico State Bar # 1809
2025 Senda de Andres
Santa Fe, New Mexico 87501
(505) 690-8733
stevensmichel@comcast.net

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

FACTUAL BACKGROUND.................................................................................................2

ARGUMENT – ....................................................................................................................7

    STANDARD FOR GRANTING INJUNCTIVE RELIEF............................................................7

        1)  PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF THE *PETITION*.........8

           a)  Plaintiff has standing........................................................................................8

           b)  When the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide its advice and consent...................................................................12

           c)  By its refusal to consider the nomination of Judge Garland, the Senate has neglected its duty and should be required to promptly undertake that determination..................................................................................................16

           d)  This case is justiciable, and the claims made do not impinge on either the "Speech or Debate Clause" of the U.S. Constitution or the "Political Question Doctrine."...........................................................................................20

      2)  ABSENT AN INJUNCTION, PLAINTIFF WILL SUFFER IRREPARABLE HARM FOR WHICH THERE IS NO ADEQUATE LEGAL REMEDY...........................23

      (3) AN INJUNCTION WILL NOT HARM OTHER PARTIES.............................................24

      (4) AN INJUNCTION WILL NOT HARM THE PUBLIC INTEREST.................................25

CONCLUSION....................................................................................................................26

# TABLE OF AUTHORITIES

**CASES:**

*Baker v. Carr*, 369 U.S. 186 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 22

*Caminetti v. United States*, 242 U.S. 470, 37 S. Ct. 192 (1917). . . . . . . . . . . . . . . . . . .18

*Coleman v. Miller*, 307 U.S. 433 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Department of Commerce et al. v. United States House of Representatives, et al.*, 525 U.S. 316 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dollar General Corp. v. Mississippi Band of Choctaw Indians,* No. 13-496 (2016). . . . . . . . 6

*Eastland v. United States Serviceman's Fund,* 421 U.S. 491 (1975). . . . . . . . . . . . . . . 22

*Freytag v. Commissioner*, 501 U.S. 868 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Friedrichs v. California Teachers Association*, No. 14-915 (2016). . . . . . . . . . . . . . . . . . 6

*Hawkins v. Community Bank of Raymore,* No. 14-520 (2016). . . . . . . . . . . . . . . . . . . . 6

*In re: Aiken County, et al.*, 725 F.3d 255 (D.C. Circuit 2013). . . . . . . . . . . . . . . . . . . . 19

*Liberation News Service v. Eastland*, 426 F.2d 1379 (2d Circuit 1970). . . . . . . . . . . . . 17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . 9

*Marbury v. Madison*, 5 U.S. 137 (1803). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 18

*Morrison v. Olson*, 487 U.S. 654, 704-5 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Circuit 1974). . . . . . . . 17

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Powell v. McCormack,* 395 U.S. 486 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20-23

*Public Citizen v. United States Department of Justice,* 491 U.S. 440 (1989). . . . . . . . . . . 19

*Serono Labs, Inc. v. Shalala,* 158 F.3d 1313, 1318 (D.C. Cir. 1998). . . . . . . . . . . . . . . . 8

*Taylor v. Resolution Trust Corp.* 56 F.3d 1497, 1506 (D.C. Cir. 1995). . . . . . . . . . . . . . . 8

*United States v. Ballin*, 144 U.S. 1 (1892). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*United States v. Helstoski*, 442 U.S. 477 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Munoz-Flores,* 495 U.S. 385, 393-5 (1990). . . . . . . . . . . . . . . . . . . 19

*United States v. Texas*, No. 15-673 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**CONSTITUTION, STATUTES AND RULES:**

U.S. CONSTITUTION, ARTICLE I, § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

U.S. CONSTITUTION, ARTICLE I, § 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S. CONSTITUTION, ARTICLE II, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 13

U.S. CONSTITUTION, AMENDMENT XVII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

28 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 13

28 U.S.C. § 1651. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

STANDING RULES OF THE SENATE, RULES XXV, XXXI. 113TH CONGRESS, 1ST SESSION.
DOCUMENT 113-18. REVISED TO JANUARY 24, 2013. U.S. GOVERNMENT
PRINTING OFFICE. NOVEMBER 4, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

**OTHER:**

Aisch, Gregor; Keller, Josh; Lai, K.K. Rebecca and Yourish, Karen: "Supreme Court Nominees
Considered in Election Years Are Usually Confirmed," *The New York Times*, updated
3/16/16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

American Bar Association, Status of Federal Judicial Vacancies, Nominations and
Confirmations: 103rd – 113th Congress (1993-2014).
http://www.americanbar.org/content/dam/aba/uncategorized/GAO/2014dec19_vacnom
scons.authcheckdam.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

American Bar Association, ABA Washington Letter, June 2016.
http://www.americanbar.org/publications/governmental_affairs_periodicals/washingtonl
etter/2016/june/garland.html . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cushman, John H., Jr.: "Senate Imperils Judicial System, Rehnquist Says,"
*New York Times,* January 1, 1998, A1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

DeBonis, Mike and Kane, Paul: "Supreme Court is an issue again after McCain suggests Clinton blockade," *The Washington Post*, October 17, 2016, https://www.washingtonpost.com/news/powerpost/wp/2016/10/17/supreme-court-is-an-issue-again-after-mccain-suggests-clinton-blockade/ . . . . . . . . . . . . . . . . . . . . 16

Dinan, Stephen and Boyer, Dave: "Republicans rule out replacing Antonin Scalia until new president is elected." *The Washington Times*, February 13, 2016. . . . . . . . . . . . . . . . . . 2

Fandos, Nicholas: "Garland Shouldn't Be Considered After Election, McConnell Says," *The New York Times* March 20, 2016. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Grassley, Senator Chuck: Letter from Senator Grassley and Senate Judiciary Commit-tee members to Senate Majority Leader McConnell, February 23, 2016. . . . . . . . . . . . . 2, 3

Hamilton, Madison, and Jay; *Federalist Papers* (1788), Nos. 66, 67, 70, 76, 77. . . . . 2, 11-14

Massie, Chris, "John McCain: 'I don't know' if Trump will be better for Supreme Court than Clinton," *CNN,* October 17, 2016, http://www.cnn.com/2016/10/17/politics/mccain-clinton-trump-supreme-court/index.html . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

McConnell and Grassley: "McConnell and Grassley: Democrats shouldn't rob voters of chance to replace Scalia." Op-Ed. *The Washington Post,* February 18, 2016. . . . . . . . . . . 2

McConnell, Senator Mitchell: Posting to Facebook page: https://www.facebook.com/mitchmcconnell/posts/1021148581257166 . . . . . . . . . . 2

Obama, President Barack: "Merrick Garland Deserves a Vote - For Democracy's Sake." Op-Ed. *The Wall Street Journal,* July 17, 2016. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Renzin, Lee: "Advice, Consent, and Senate Inaction - Is Judicial Resolution Possible?"  N.Y.U. Law Review, Volume 73:1739, Nov.1998. . . . . . . . . . . . . . 6, 12, 15, 25

Sutherland Statutory Construction, § 45:2. . . . . . . . . . . . . . . . . . . . . . . . 18

United States Courts website ("Judicial Emergencies" listed under Judicial Vacancies): http://www.uscourts.gov/judges-judgeships . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**INTRODUCTION**

I, the Plaintiff in this case, seek a preliminary injunction requiring Defendants to take those actions, prior to the adjournment of the 114th Congress, necessary for the Senate to determine, by a vote of the entire body, whether it will provide its advice and consent to the nomination of Judge Merrick Garland to the United States Supreme Court. A preliminary injunction is needed because on December, 16, 2016 the 114th Congress is scheduled to adjourn, and I will have forever been deprived of my rights, under the 17th Amendment to the United States Constitution, to have my elected senators exercise their equal vote on whether to provide advice and consent to the nomination of Judge Garland.

In this action, I have sought a *declaratory judgment* from the Court declaring that the Senate, as a body, has a non-discretionary duty under Article II Section 2 of the United States Constitution to determine, within a reasonable time, whether to provide advice and consent to a nominee of the President to fill a vacancy on the Supreme Court.  I have also asked the Court to issue a *writ of mandamus* directing Defendants to promptly fulfill, or cause the United States Senate to fulfill, its constitutional duty to determine whether to provide advice and consent to the appointment of Judge Merrick Brian Garland to the Supreme Court.

Defendants are to respond to my Petition by November 25, 2016,[1] which leaves little time for the Court to evaluate and provide the relief I have requested before it is too late to protect me from irreparable injury. As stated in my *Petition*, this case involves Constitutional issues of the utmost importance, and I believe the facts and law support my

---

[1] Case 1:16-cv-01729-RC, *Order*, ECF Document 11, October 11, 2016

prevailing on the merits. Absent a preliminary injunction, however, it will be extremely difficult, if not impossible, to protect my rights with respect to the nomination of Judge Garland. On the other hand, issuing a preliminary injunction will cause the Defendants no harm, because I have not requested that the Court cause the Senate to *provide* its advice and consent, only that it cause the Senate to determine *whether* to provide advice and consent.  It is hard to imagine any scenario where having the Senate vote on whether to provide advice and consent for a U.S. Supreme Court nomination would not be in the public interest.

**FACTUAL BACKGROUND**

Justice Antonin Scalia died on February 13, 2016. His death created a vacancy on the nine-member[2] United States Supreme Court. On that same day Senate Majority Leader McConnell issued a statement saying: "The American people should have a voice in the selection of their next Supreme Court Justice. Therefore, this vacancy should not be filled until we have a new President."[3]

On February 23, 2016, eleven members of the Senate Judiciary Committee, constituting a majority of that Committee, signed a letter to Senate Majority Leader

---

[2] 28 U.S.C. §1

[3] https://www.facebook.com/mitchmcconnell/posts/1021148581257166; see also "Republicans rule out replacing Antonin Scalia until new president is elected," by Stephen Dinan and Dave Boyer, *The Washington Times*, February 13, 2016; "McConnell and Grassley: Democrats shouldn't rob voters of chance to replace Scalia" by Mitch McConnell and Chuck Grassley, *The Washington Post,* February 18, 2016.
It is important to understand that the Framers did not appear to believe that voters should choose Supreme Court justices: "The exercise of [the appointment power] by the people at large will be readily admitted to be impracticable; as waiving every other consideration, it would leave them little time to do anything else." *Federalist Papers* No. 76, Hamilton.

McConnell stating their intent to "withhold consent on any nominee to the Supreme Court submitted by the President to fill Justice Scalia's vacancy." Those members also stated that "this Committee will not hold hearings on any Supreme Court nominee until after our next President is sworn in on January 20, 2017."[4]  By Senate rules, the Judiciary Committee provides recommendations to the full Senate on judicial nominees *before* those nominees are considered and voted upon by the Senate.[5] In other words, the refusal identified in the February 23rd letter precludes Senate action, ever, on President Obama's nominee, and divests the President of his appointment power for the remainder, nearly one-fourth (11 months), of his four-year term.

On March 16, 2016 President Barack Obama nominated Merrick Brian Garland, Chief Judge of the United States Court of Appeals for the District of Columbia Circuit, to fill the Supreme Court vacancy caused by the death of Justice Scalia. The President's nomination was pursuant to Article II Section 2 of the United States Constitution, which provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint… Judges of the supreme Court…."

On March 20, 2016, in a widely reported statement, Senate Majority Leader McConnell re-affirmed that the Senate would never consider President Obama's nomination of Judge Garland, and would instead await a nomination from an as-yet-to-be-

---

[4] The letter is attached as an Exhibit to this Petition

[5]  The Senate Judiciary Committee recommends to the full body whether the Senate should advise and consent to a nomination by the President to fill a Supreme Court vacancy. Rule XXXI of the Standing Rule of the Senate (Rev. 2013) states: "When nominations shall be made by the President of the United States to the Senate, they shall, unless otherwise ordered, be referred to appropriate committees; and the final question on every nomination shall be, 'Will the Senate advise and consent to this nomination?'"

elected President: "The principle is the American people are choosing their next president, and their next president should pick this Supreme Court nominee."[6]

On June 21, 2016, the American Bar Association Standing Committee on the Federal Judiciary, after a months-long investigation, unanimously gave Judge Garland its highest rating of "Well-Qualified." In its June of 2016 newsletter, following the release of its rating, ABA President Paulette Brown was quoted as saying:

> It is now imperative that the Senate fulfills its constitutional responsibilities to consider and act promptly on the Supreme Court nominee. While the Court continues to function, its 4-4 decisions do not establish precedent and leave open questions on issues that are vital to the lives of everyday people.[7]

As of October 17, 2016, Judge Garland's Supreme Court nomination had awaited Senate action for 216 days – representing the longest time for such a nomination in United States history. Prior to Judge Garland, the average time for a Supreme Court nominee to be either confirmed, rejected or withdrawn was 25 days. The longest confirmation process to date, prior to Judge Garland, was 125 days for Justice Brandeis in 1916. By January 20, 2017, when President Obama's term ends, Judge Garland's nomination will have awaited Senate action for 311 days, by far the longest for any Supreme Court nominee in American history.[8]

---

[6] See, e.g. "Garland Shouldn't Be Considered After Election, McConnell Says," by Nicholas Fandos, *The New York Times* March 20, 2016.

[7] http://www.americanbar.org/publications/governmental_affairs_periodicals/washingtonletter/2016/june/garland.html

[8] "Supreme Court Nominees Considered in Election Years Are Usually Confirmed," *The New York Times,* by Gregor Aisch, Josh Keller, K.K. Rebecca Lai and Karen Yourish, updated March 16, 2016

The Senate's refusal to undertake its role of advice and consent is a result of the obstruction of Defendant Senate Majority Leader McConnell, Defendant Judiciary Committee Chairman Grassley and eleven (11) members of the Senate Judiciary Committee that have blocked Committee action.[9]

In addition to my injuries, as explained earlier, Defendants' refusal to consider the nomination of Judge Garland has and will adversely and impermissibly impact all three branches of the federal government:

(1) the President is deprived of his power to appoint judges to the United States Supreme Court;

(2) the Senate is unable to fulfill its "advice and consent" role in the judicial appointment process because senators are not allowed to vote on whether to provide advice and consent; and

(3) the Supreme Court is deprived of its statutorily-prescribed nine justices,[10] creating a situation where the Court is unable to resolve important issues and establish a uniform system of laws throughout the United States.

The lack of nine members on the Supreme Court has had a critical and adverse effect on the Court's ability to fulfill its responsibilities. Four important cases on the Supreme

---

[9] Defendant Kentucky Senator McConnell, as leader of the majority party in the Senate, is able to schedule or refuse votes of the full Senate. He has refused to allow a vote on whether the Senate should provide advice and consent for the nomination of Judge Garland. Defendant Iowa Senator Grassley is Chairman of the Senate Judiciary Committee and, pursuant to the Standing Rules of the Senate, all judicial nominations are referred to the Judiciary Committee which then recommends to the full body whether it should provide advice and consent.  As Chairman, Senator Grassley has refused to allow the Committee to consider the Supreme Court nomination of Judge Garland. Defendant United States Senate is the constitutional body of the United States government that must determine whether to provide advice and consent for nominees to the Supreme Court. The Senate has not, and by the statements of a small group of senators that control Senate business, will not undertake this constitutional duty with respect to the nomination of Judge Garland to the Supreme Court.

[10] 28 U.S.C. §1

Court's 2016 docket were decided by default as a result of a 4-4 tie, which has the effect of affirming the lower court judgment.[11] When the circuit courts disagree, the Supreme Court must be able to resolve those disputes in order to provide a uniform system of laws throughout the United States. Otherwise, citizens may have different speech, due process and other rights depending on where in the United States they live.

In addition, as a result of the Senate's refusal to act on the nomination of Judge Garland, citizens of the United States are denied a voting record for their senators. A voting record for senators is essential to enable citizens to exercise their role as informed electors in a representative government.[12]

Finally, it is important to recognize that the refusal to act on the Garland nomination is the culmination of a trend over the years in which the Senate has neglected its advice and consent role for judicial nominations by delay and inaction.  That trend should be halted and reversed in order to avoid further degradation of the judiciary.

According to the Administrative Office of the U.S. Courts, judicial vacancies have been increasing to the point where, as of October 17, 2016, there were a total of 99 judicial vacancies in the federal court system, and 59 nominations pending. There are currently 35 "judicial emergencies" in the United States due to the Senate's delay, neglect and obstruction of the judicial nomination and appointment process. All of these numbers have increased significantly since I filed my original *Petition* in late August.  A "judicial

---

[11] *United States v. Texas*, No. 15-673; *Dollar General Corp. v. Mississippi Band of Choctaw Indians*, No. 13-496; *Friedrichs v. California Teachers Association*, No. 14-915; *Hawkins v. Community Bank of Raymore,* No. 14-520.

[12] "Advice, Consent, and Senate Inaction – Is Judicial Resolution Possible?" by Lee Renzin, N.Y.U. Law Review, Volume 73:1739, November 1998 at 1747-8.

emergency" in federal court is a situation in which the courts are unable to keep pace with the cases before them. [13]According to the American Bar Association, the number of judicial vacancies existing at the end of the current 114th Congress will be among the highest ever.[14]

**ARGUMENT**

The standards that govern whether a preliminary injunction should be issued support such relief in this case. The law and facts of the situation surrounding the Garland nomination, I believe, indicate that I will succeed on the merits. Absent an injunction, I will suffer irreparable harm for which there is no adequate legal remedy, and granting a preliminary injunction as requested will not harm the Defendants and will be in the public interest.

**Standard for Granting Injunctive Relief**

By this motion I am asking the Court to provide preliminary injunctive relief pursuant to Fed. R. Civ. P 65(a). No other avenue for adequate relief exists, and my claims satisfy the four-part test for interim injunctive relief, which is: (1) that I am likely to

---

[13] http://www.uscourts.gov/judges-judgeships; For Circuit Courts, it is defined as "any vacancy in a court of appeals where adjusted filings per panel are in excess of 700; or any vacancy in existence more than 18 months where adjusted filings are between 500 to 700 per panel." For District Courts it is defined as "any vacancy where weighted filings are in excess of 600 per judgeship; or any vacancy in existence more than 18 months where weighted filings are between 430 to 600 per judgeship; or any court with more than one authorized judgeship and only one active judge.

[14]http://www.americanbar.org/content/dam/aba/uncategorized/GAO/2014dec19_vacnomscons.authcheckdam.pdf

succeed on the merits of my *Petition*, (2) that in the absence of an injunction I will suffer irreparable harm for which there is no adequate legal remedy, (3) that the injunction will not substantially harm other parties, and (4) that the injunction will not significantly harm the public interest.[15]

## (1) Plaintiff is Likely to Succeed on the Merits of the *Petition*

The facts and law governing this action indicate that I should succeed on the merits. I have standing. In addition, I believe the law requires that when the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide its advice and consent. By its refusal to consider the nomination of Judge Garland, the Senate has neglected its duty and should be required to promptly undertake that determination. This case is justiciable, and the claims I am making do not impinge on either the "Speech or Debate Clause" of the U.S. Constitution or the "Political Question Doctrine."

### a) Plaintiff Has Standing

As stated in my *Petition,* I am a United States citizen, a resident of Santa Fe County in New Mexico, and a registered voter in that county of New Mexico. In recent elections I have voted for President Barack Obama and for the current U.S. Senators representing New Mexico, Thomas Udall and Martin Heinrich.

---

[15] *Taylor v. Resolution Trust Corp.* 56 F.3d 1497, 1506 (D.C. Cir. 1995). These four factors have generally been evaluated in a manner that balances them against each other. *See Serono Labs, Inc. v. Shalala,* 158 F.3d 1313, 1318 (D.C. Cir. 1998).

I have standing to bring this action because the situation which I request be resolved is of "imperative constitutional necessity" [16] and has caused me specific injury-in-fact which can be remedied only by the relief requested herein.[17]

I have filed this action because I have had the effectiveness of my vote for United States senators diminished as a result of the actions of Defendants. Those actions have denied the Senators that represent me in the Senate of their ability to vote in the Senate with respect to the nomination of Judge Garland. This deprivation has caused me specific injury-in-fact of a nature recognized as sufficient to establish standing.

In *Department of Commerce et al. v. U.S. House of Representatives et al.*, a case involving the Constitution's "Census Clause" and voter standing, the Supreme Court held:

> Appellee Hoffmeister's expected loss of a Representative to the United States Congress undoubtedly satisfies the injury-in-fact requirement of Article III standing. In the context of apportionment, we have held that voters have standing to challenge an apportionment statute because "[t]hey are asserting 'a plain, direct and adequate interest in maintaining the effectiveness of their votes.'"[18]

Other cases have confirmed the constitutionally-protected interest citizens and others have in protecting the effectiveness of their vote. [19] The 17th Amendment of the United States Constitution states:

---

[16] *Nixon v. Fitzgerald*, 457 U.S. 731, 761 (1982) (Burger, C.J., concurring)

[17] These three factors: injury, causation and ability to redress, were established in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 573-4, 578 (1992).

[18] *Department of Commerce et al. v. United States House of Representatives et al.*, 525 U.S. 316, 331-2 (1999)

[19] See, e.g. *Coleman v. Miller*, 307 U.S. 433, 438 (1939), where the U.S. Supreme Court discussed the right and privilege under the U.S. Constitution of state senators in Kansas to have their votes given effect.

> The Senate of the United States shall be composed of two Senators from each State, *elected by the people thereof*, for six years; and *each Senator shall have one vote*....

(Emphasis added).  This constitutional provision vests citizens with the right to vote for senators who are each to have one vote on Senate actions.

When a group of senators blocks Senate consideration of a Supreme Court nominee, and senators representing me are prohibited from voting, I am deprived of the effectiveness of my constitutionally provided right to vote for, and be represented by, United States senators.  This is not a diminution of voting power shared equally by all citizens, but is a disproportionate impairment to those citizens, such as me, who are not represented by the senators blocking Senate action.  Because my senators have been prevented from voting on the nomination of Judge Garland, these senators have effectively lost their ability to represent the voters of New Mexico on the Garland nomination – and this has diminished the effectiveness of my vote just as if I had no senator at all representing me in the Supreme Court nomination process. On the other hand, constituents of the senators blocking Senate action have been provided powers exceeding their "one vote" constitutional allocation.

It is important to recognize that the harm I am claiming is different from the generalized harm that has precluded voter standing in situations where the Senate declines to consider legislation. My injury, and claim of standing, are based upon rights that I have under the 17th Amendment to vote for United States senators, and to have each of those senators represent my interests with "one vote" in the Senate. I understand that my voting power is not necessarily diminished when the Senate refuses to consider legislation and other things that are within its discretion to act (or not act) upon. My voting power *is*

diminished, however, when my senators are procedurally blocked by other senators, who possess disproportionate power to control Senate action, from voting on items that the Senate, as a body, *must* vote on – such as whether to provide advice and consent for a Supreme Court nominee. In other words, when the entire Senate votes, my Senators must be provided "one vote." And in the specific situation of U.S. Supreme Court nominations, the Constitution requires that the entire Senate must vote.  In the situation at hand, a minority of senators have co-opted the Senate's deliberation and voting process, and attempted to withhold advice and consent for the Garland nomination by blocking Senate consideration.

As will be discussed in more detail later, the framers of the Constitution intended the *entire* Senate to vote on Supreme Court nominees. This is supported by the writings of the contemporaneous *Federalist Papers.* Alexander Hamilton authored No. 76, which explains why the *entire* Senate must participate in the appointment process. It basically says that while "some individuals" in the Senate might be improperly influenced, if the entire "body" is acting there will always be a "large proportion" of "independent and public-spirited" senators to preserve the integrity of the process:

> But it is as little to be doubted that there is always a large proportion of the body which consists of independent and public-spirited men who have an influential weight in the councils of the nation... That it might therefore be allowable to suppose that the executive might occasionally influence some individuals in the Senate, yet the supposition that he could in general purchase the integrity of the whole body would be forced and improbable.

Defendants' refusal to allow Senate consideration of Judge Garland's Supreme Court nomination has directly caused my injury, and only the relief requested herein – causing the full Senate to decide whether it will provide advice and consent to the nomination of Judge Garland, can remedy this injury.

**b) When the President nominates a person to fill a Supreme Court vacancy, the Senate has a non-discretionary duty, under Article II Section 2 of the Constitution, to determine within a reasonable time whether it will provide its advice and consent.**

The subject matter of this Petition implicates the powers and duties of all three branches of the federal government. A New York University Law Review article on this subject in 1998 noted:

> A trifurcated government structure is arguably the most remarkable creation of the Framers. It was designed both to enhance the functioning of each branch and to prevent the aggrandizement of power by one branch. When, throughout the course of the nation's existence, breakdowns in that system have arisen, the Supreme Court has intervened to restore the system to its proper balance [citations omitted].[20]

The President and the Senate share the power and duty to fill vacancies on the Supreme Court. The United States Constitution, Article II Section 2, establishes the process by which Supreme Court vacancies are filled:  the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Judges of the supreme Court...." To the extent there is ambiguity as to what the "advice and consent" role of the Senate requires, "[i]t is emphatically the province and duty of the judicial department to say what the law is."[21] I believe the Senate's role, at a minimum, requires a determination by the Senate - as a body - of whether to provide or withhold the "advice and consent" necessary for the President to appoint a Supreme Court nominee.  The Senate cannot ignore a nomination. In the *Federalist Papers*, Alexander Hamilton, says: "[the Senate] can <u>only </u>ratify or reject the choice [the President] may have made." (emphasis added).[22]  Any fair reading

---

[20] Renzin, "Advice, Consent…,"at 1751-2; see also *Freytag v. Commissioner*, 501 U.S. 868, 878 (1991)

[21] *Marbury v. Madison,* 5 U.S. 137, 177 (1803)

[22] *Federalist Papers* No. 66, Hamilton

of the *Federalist Papers* recognizes that *inaction* was not an option ever even contemplated by the Framers.

The Constitution's language in Article II Section 2 establishes the inter-dependent roles of the President and Senate in the process of filling vacancies on the Supreme Court. The President shall nominate, *and by and with* the Senate's advice and consent, shall appoint. When read in its entirety, Article II Section 2 clarifies that the appointment of justices to the Supreme Court is a power and duty *jointly* vested in the President and the Senate.[23]  When the Senate is procedurally blocked from deciding whether to provide "advice and consent" for a Presidential nominee, the constitutional process breaks down and the President is divested of his power to appoint. Such procedural maneuvers also thwart the Framers understanding that Senate co-operation was a required part of the process.[24] Taken to its logical conclusion, if the Senate – acting through the procedural power of a few senators - entirely neglected its advice and consent role, the judicial branch of government would be of no consequence,[25] and eventually eliminated. That does not make sense.

---

[23] "The ordinary power of appointment is confided to the President and Senate *jointly*...," *Federalist Papers* No. 67, Hamilton; This clarity comes from the final clause of that section which states that, unlike the Supreme Court, the appointment of other officers may, by law, vest in the President *alone*:

> ... [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint... Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: <u>but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone</u>, in the Courts of Law, or in the Heads of Departments.

(Emphasis added).

[24] *Federalist Papers* Nos. 76,77 Hamilton

[25] The Supreme Court must have at least six (6) justices to constitute a quorum. 28 U.S.C. §1

Moreover, there was a reason why the Framers vested the appointment power in the President *and the Senate*, and not the electorate or the House of Representatives. The Senate was perceived to be a stable and deliberative body. Unlike the House of Representatives, it was not "so fluctuating" and "numerous" as to threaten an orderly appointment process – which, if assigned to the House, would invite "infinite delays and embarrassments." The Framers expected that the Senate would exhibit "deliberation" and "circumspection," and serve as an "excellent check" to assure that Presidential nominees were not governed by "private inclinations and interests."[26]  The current situation in the Senate is the complete opposite of what the Framers intended – with a small group of powerful Senators obstructing an orderly nomination and appointment process to fill Supreme Court vacancies.

An issue before this Court is whether the Senate's inaction with respect to Judge Garland has crossed the line, from a permissible management of Senate business[27] to an impermissible abrogation of its constitutional duty. The Senate's outright refusal to even consider the President's nominee, as evidenced by the Senate Judiciary Committee letter and the statements of Leader McConnell, crosses that line and must be redressed. The Senate's refusal compromises the viability of the judiciary and the power of the presidency. In *United States v. Ballin,* the Court found that the "[C]onstitution empowers each house to determine its rules of proceedings. It may not by its rules ignore constitutional restraints or violate fundamental rights."[28]

---

[26] *Federalist Papers* Nos. 70, 76, 77

[27] U.S. Constitution, Article I, § 5: "Each House may determine the Rules of its Proceedings…"

As was stated in an N.Y.U. Law Review article by Lee Renzin in 1998:

The characteristics of the Senate that ostensibly enable it to make a vital contribution to the appointment process are rendered moot when the full Senate does not vote on nominees. This phenomenon does not comport with the Framers' desire that "advice and consent" – an integral component of the system of separation of powers – be implemented in a manner that would foster that balance…. In addition, the prospect of the Senate having the unilateral ability to dismantle the federal judiciary without a "check" – either by the people, through procedures designed to ensure accountability, or by the full Congress and the President, via bicameralism and presentment – is one which raises serious separation of power concerns. Simply put, Senators not only are infringing on the power of the other two branches, but they are doing so in a manner that robs the public of an opportunity to determine how their particular Senator feels about the nominees that reach the Senate.[29]

Recently, in a Wall Street Journal opinion article, President Obama explained the constitutional crisis that the country is facing, and the threat it poses to the balance of power among the three branches of government. He discussed that if a group of senators

refuse even to consider a nominee in the hopes of running out the clock until they can elect a president from their own party, so that he can nominate his own justice to the Supreme Court, then they will effectively nullify the ability of any president from the opposing party to make an appointment to the nation's highest court. They would reduce the very functioning of the judicial branch of the government to another political leverage point.

We cannot allow the judicial confirmation process to descend into an endless cycle of political retaliation. There would be no path to fill a vacancy for the highest court in the land. The process would stall. Court backlogs would grow. An entire branch of government would be unable to fulfill its constitutional role. And some of the most important questions of our time would go unanswered.[30]

President Obama's forewarning appears to be valid. On October 17, 2016 Senator John McCain from Arizona was quoted as saying: "I promise you that we will be united

---

[28] *United States v. Ballin*, 144 U.S. 1, 5 (1892)

[29] (citations omitted); Renzin, "Advice, Consent…," at 1757

[30] "Merrick Garland Deserves a Vote—For Democracy's Sake," by Barack Obama, President of the United States, *The Wall Street Journal,* July 17, 2016.

against any Supreme Court nominee that Hillary Clinton, if she were president, would put up." While a spokesperson for Senator McCain later walked that statement back, it is nevertheless indicative of a Senate process that is so broken, and so contrary to what the Constitution intended and requires, that court intervention is warranted and necessary.[31]

In 1998, in response to the slowing of the judicial confirmation process, former Chief Justice Rehnquist noted, "[t]he Senate is surely under no obligation to confirm any particular nominee, but after the necessary time for inquiry, it should vote him up or vote him down."[32] In the present case, we are not just dealing with a slowing, we are dealing with a complete stoppage.

c) **By its refusal to consider the nomination of Judge Garland, the Senate has neglected its duty and should be required to promptly undertake that determination.**

When a small group of senators, as is the case here, procedurally blocks the Senate from undertaking its constitutional role of advice and consent for a Supreme Court nominee, there is an adverse impact to all three branches of government and this Court may issue both a declaratory judgment and a writ of mandamus to right the situation. In the interim, to avoid irreparable harm, the Court may issue a preliminary injunction to assure the Senate considers the Garland nomination. The action presented by my *Petition* is

---

[31] DeBonis, Mike and Kane, Paul: "Supreme Court is an issue again after McCain suggests Clinton blockade," *The Washington Post*, October 17, 2016, https://www.washingtonpost.com/news/powerpost/wp/2016/10/17/supreme-court-is-an-issue-again-after-mccain-suggests-clinton-blockade/; "John McCain: 'I don't know' if Trump will be better for Supreme Court than Clinton," Chris Massie, *CNN*, 10/17/16, http://www.cnn.com/2016/10/17/politics/mccain-clinton-trump-supreme-court/index.html.

[32] "Senate Imperils Judicial System, Rehnquist Says," by John H. Cushman, Jr., *New York Times,* January 1, 1998, A1

justiciable, and is not barred by either the "Speech or Debate Clause" of the United States Constitution or the Political Question Doctrine.

This Court has the power to provide *declaratory* relief in situations involving the other branches of government. In *National Treasury Employees Union v. Nixon,* the District of Columbia Circuit declared that the President had a constitutional duty to comply with the law. In that case, the Court viewed declaratory relief as a mechanism to provide relief without disrupting the balance of power.[33] Similarly, in *Powell v McCormack,* the Supreme Court determined that a federal "court may grant declaratory relief even though it chooses not to issue an injunction or mandamus…. A declaratory judgment can then be used as a predicate to further relief, including an injunction."[34]  In *Powell*, the Court declared that the House of Representatives lacked the power to refuse to seat a duly elected Representative from New York.[35]

In the present case, there is simply insufficient time to issue a declaratory judgment and wait to see whether it must be followed up by injunctive relief. The Senate of the 114th Congress will adjourn on December 16, 2016, after which a new Senate, and shortly thereafter a new President, will be seated. At that point, my right to have equal Senate representation in the confirmation process for Judge Garland will have been lost.

While there is case law holding that courts may not issue a *writ of mandamus* against Congress,[36] the issue is unsettled and Plaintiff submits that the current situation

---

[33] *National Treasury Employees Union v. Nixon,* 492 F.2d 587, 616 (D.C. Circuit 1974)

[34] *Powell v. McCormack*, 395 U.S. 486, 499 (1969)

[35] Ibid. at 550

[36] See, e.g. *Liberation News Service v. Eastland*, 426 F.2d 1379, 1384 (2d Circuit 1970)

warrants that form of extraordinary relief. 28 U.S.C. Section 1651(a) provides that the "Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The plain language[37] of this statute encompasses mandamus actions against senators and the Senate. The preliminary injunction I am seeking by this motion would have the same effect, with respect to the nomination of Judge Garland, as the writ of mandamus requested in my *Petition*.

In the landmark case of *Marbury v. Madison,* Justice Marshall described the history and use of writs of mandamus, and wrote:

> [T]he case of *The King v. Baker et al.* states with much precision and explicitness the cases in which the writ may be used. "Whenever," says the very able judge, "there is a right to execute an office, perform a service, or exercise a franchise (more especially if it be a matter of public concern or attended with profit), and a person is kept out of possession, or dispossessed of such right, and has no other specific legal remedy, this court ought to assist by mandamus, upon reasons of justice, as the writ expresses, and upon reasons of public policy, to preserve peace, order and good government." In the same case, he says, "this writ ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one."[38]

The circumstances described in Justice Marshall's opinion, a right to execute an office, in a "matter of public concern," with no other legal remedy, apply to the situation now before the Court, and weigh in favor of the Court exercising its authority to provide a remedy to preserve "justice and good government."

---

[37] "Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise" §45:2 Sutherland Statutory Construction. See also, *Caminetti v. United States*, 242 U.S. 470, 37 S. Ct. 192 (1917)

[38] *Marbury v. Madison*, 5 U.S. 137, 168-9 (1803)

It is also worth noting that in extraordinary cases the federal courts have issued mandamus against other branches of government when they neglected a clear statutory duty. In *In re Aiken County, et al.,* the D.C. Circuit Court of Appeals held, in granting a petition for a writ of mandamus against the Executive Branch, that:

> Our analysis begins with settled, bedrock principles of constitutional law. Under Article II of the Constitution and relevant Supreme Court precedents, the President must follow statutory *mandates* so long as there is appropriated money available and the President has no constitutional objection to the statute.
>
> * * * *
>
> This case has serious implications for our constitutional structure. It is no overstatement to say that our constitutional system of separation of powers would be significantly altered if we were to allow executive and independent agencies to disregard federal law in the manner asserted in this case....[39]

Unlike other situations, where mandamus, or in the case of this *Motion* a preliminary injunction, could be viewed as compromising the separation of power, in the situation at hand I am seeking injunctive relief to *restore* the separation of power. Justice Kennedy has said that "It remains one of the most vital functions of this Court to police with care the separation of the governing powers."[40] In his dissent in *Morrison v. Olson,* Justice Scalia argued that, in the context of a separation of powers challenge to an action of Congress, the

---

[39] In *In re: Aiken County, et al.*, 725 F.3d 255,259 and 266-7 (D.C. Circuit 2013), the U.S. Court of Appeals - D.C. issued a writ of mandamus against the executive branch, specifically the Nuclear Regulatory Commission, compelling it to proceed with a legally mandated licensing process.

[40] *Public Citizen v. United States Department of Justice,* 491 U.S. 440, 468 (1989) (Kennedy, J. concurring); see also, *United States v. Munoz-Flores,* 495 U.S. 385, 393-5 (1990); Recognizing the language from *Morrison, infra.* that "[t]he Framers of the Constitution . . . viewed the principle of separation of powers as the absolutely central guarantee of a just Government," the *Munoz-Flores* Court noted that "the Court has repeatedly adjudicated separation-of-powers claims brought by people acting in their individual capacities."

Court does *not* owe Congress the same level of deference that would be afforded when reviewing legislation.[41]

> **d)    This case is justiciable, and the claims made do not impinge on either the "Speech or Debate Clause" of the U.S. Constitution or the "Political Question Doctrine."**

The claims in my *Petition* are justiciable, and are not barred by either the "Speech or Debate Clause" of the U.S. Constitution or the Political Question Doctrine.

Justiciability

In *Powell v. McCormack* the Supreme Court was asked to declare whether a duly elected member of the House of Representatives, Adam Clayton Powell, Jr. was unconstitutionally denied his seat.  Among the preliminary requirements for the case to proceed was a determination that the case was "justiciable." In *Powell* the Court determined that it was, and went on to find that the House of Representatives was without power to exclude Powell. Similarly, this Petition is justiciable.

In deciding whether a claim is justiciable, two findings must be made: 1) that "the duty asserted can be judicially identified and its breach determined," and 2) that an effective remedy can be fashioned.[42]  I have asked this Court to determine that the Senate has a non-discretionary duty to determine whether it will provide advice and consent to the Supreme Court nomination of Judge Garland, and that the Senate has breached that duty. I have also requested that the Court grant both declaratory and mandamus relief to remedy that breach of duty. Granting that relief would cause the Senate to consider Judge

---

[41] *Morrison v. Olson,* 487 U.S. 654, 704-5 (1988) (Scalia, J., dissenting)

[42] *Baker v. Carr*, 369 U.S. 186, 198 (1962)

Garland's nomination and would remedy the situation. In *Powell*, the Court determined that declaratory relief satisfied the justiciability requirement.[43]

Speech or Debate Clause

The "Speech or Debate Clause" of the United States Constitution, Article I, Section 6, provides that "for any Speech or Debate in either House, [senators or representatives] shall not be questioned in any other Place."

The "Speech or Debate Clause" is not a bar to this action against Defendants Senator McConnell and Senator Grassley. That clause only provides protection from lawsuits against legislators resulting from "words spoken in debate… [c]ommittee reports, resolutions, and the act of voting… [and] things done generally in a session of the House by one of its members in relation to business before it.'"[44] The *refusal to act* by a handful of senators, in order to procedurally prevent the Senate from performing its duty to participate in the judicial appointment process for Supreme Court justices, is not an activity "done generally" by senators  "in relation to business before" them.

In addition, the Speech or Debate Clause does not apply to a *refusal* to act: "it is clear from the language of the Clause that protection extends only to an act that has already been performed."[45]

---

[43] *Powell* at 516-18

[44] *Powell* at 502

[45] *United States v. Helstoski*, 442 U.S. 477, 490 (1979)

However, even if this Court disagrees and determines that the Speech or Debate Clause bars this action against Senator McConnell and Senator Grassley, the Court may still review the propriety of, and act on, the *Senate's* failure to participate in the Supreme Court judicial nomination and appointment process. The Speech or Debate Clause applies only to individuals and does not apply to an action against the Senate. [46]  It is also important to note that, in *Powell,* the Court left open the question of whether the Speech or Debate Clause would bar an action against individual members of Congress if no other remedy was available.[47]

Political Question Doctrine

The premise underlying the Political Question Doctrine is the desire to prevent federal courts from deciding policy issues. This doctrine "helps to preserve the separation of powers by ensuring that courts do not overstep their bounds."[48] The action here does not invoke a "political question," but rather an interpretation as to whether the Constitution requires the Senate to determine if it will provide advice and consent for Supreme Court nominations. In *Baker* the Court determined that legislative apportionment is not a political question, and therefore is appropriate for judicial review. Similarly, in *Powell*, the Court decided that it could determine whether the House of Representatives

---

[46] *Powell* at 505-6; see also *Eastland v. United States Serviceman's Fund,* 421 U.S. 491, 513 (1975) (Marshall, J. concurring)

[47] *Powell* at note 26

[48] See *Baker v. Carr*, 369 U.S. 186, 210 (1962)

properly refused to seat a duly elected and constitutionally qualified member, and found it was improper.

In the current situation, I am asking the Court to interpret the Constitution and determine that the Senate, i.e. all senators, must be allowed to vote on whether to provide "advice and consent" for a duly nominated Supreme Court justice. The Senate acts by voting, and the "advice and consent" role must be carried out by *the Senate,* and not be blocked by one senator or a group of senators less than a majority. By causing the Senate to not even consider a nominee duly presented to it undermines the foundational framework of our government, Defendants have denied me the full value of my vote for United States senators and President.

In determining that there was no political question barring the courts from deciding the *Powell* case, the court defended its established role:

> Our system of government requires the federal courts on occasion to interpret the Constitution in a manner at variance with the construction given the document by another branch. The alleged conflict that such an adjudication may cause cannot justify the courts' avoiding their constitutional responsibility…. [I]t is the responsibility of this Court to act as the ultimate interpreter of the Constitution. *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 2 L. Ed. 60 (1803).[49]

## (2) Absent an Injunction, Plaintiff Will Suffer Irreparable Harm for which there is No Adequate Legal Remedy

As stated in both the *Petition* and September 6th *Motion*, it is important that this matter be resolved in a time frame that permits any remedy to be meaningful and useful. Unless the Senate, as a body, considers and determines whether to provide advice and consent for Judge Garland's Supreme Court nomination before it adjourns in December, my

---

[49] *Powell* at 549.

vote for President and senators will have been rendered meaningless with regard to a very important judicial nomination during the term of President Obama. The 114th Congress is scheduled to permanently adjourn December 16, 2016, after which Judge Garland's nomination cannot be considered by this Congress. While the December 16th adjournment may perhaps be extended until the end of 2016, the urgency of the situation exists regardless.

Once the Senate adjourns in December, my rights will have been permanently lost. In January, a new Congress will convene with different senators than exist today. The influence that my senators may have in the new Congress, and the importance of their  vote in a future Congress confirmation process is unknown, but will assuredly be different. Nor is there any cause to believe that Judge Garland's nomination will continue after December. For obvious reasons, monetary damages, even if available, could not restore my voting power on this particular confirmation. Unless the Court causes or directs the full Senate to determine whether to provide advice and consent for the Garland nomination by the end of December, the harm to me will be irreparable.

**(3) An Injunction Will Not Harm Other Parties**

While an injunction is necessary to protect my rights, causing the Senate to perform its Constitutionally-required role in the Supreme Court nomination process will not harm any other party. As I have stated throughout this action, I am not asking for a particular outcome of the confirmation process, only that the process itself be undertaken in a meaningful time-frame. The Senate may decide not to provide advice and consent for the Garland nomination, in which case the outcome will be the same as the current situation.

Or, the Senate may vote as a body to confirm Judge Garland. If the Senate, by a majority vote, confirms the Garland nomination, there is again no harm to any party. Fulfilling its constitutional role can hardly be construed as a harm to any of the Defendants.

**(4) An Injunction Will Not Harm the Public Interest**

An injunction would cause the Senate to consider and determine whether to provide its advice and consent for the Garland nomination. This does not harm the public interest - it supports the public interest. The Supreme Court nomination and appointment process is broken in the Senate. This is a threat to our democracy. Restoring some workability to one part, of one branch, of government, and assuring that dysfunction in the Senate does not impair the powers and duties of the executive and judicial branches, can only serve the public interest.

Eighteen years ago, in a law review article discussing the Senate's abrogation of its duty to timely consider judicial nominees, the author concluded:

> Over the past two centuries, the importance of the federal judiciary's role in the nation's framework has increased markedly, to a position surely even beyond the vision of President Washington [citation omitted]. The integrity and efficiency with which the judiciary carries out that role, however, is being jeopardized by the Senate's failure to fulfill its constitutionally mandated duties to provide advice and consent with respect to presidential nominations for federal judgeships. A judicial remedy ought to be available to respond to this threatening situation.[50]

The situation today is worse, and a judicial remedy with respect to the Garland nomination is imperative.

---

[50] Renzin, "Advice, Consent...," at 1787

25

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff prays for a Court order granting his request for a preliminary injunction that 1) requires Senator Mitchell McConnell to schedule a vote of the full Senate, before the 114th Congress adjourns, on whether to provide advice and consent for the nomination of Judge Merrick Garland to the United States Supreme Court, 2) requires Senator Charles Grassley to hold any necessary Judiciary Committee hearings prior to the vote of the full Senate, 3) requires that the Senate, as a body, vote on whether the Senate will provide its advice and consent to the nomination of Judge Garland to the United States Supreme Court, and 4) grants such other and further relief as the Court deems just and proper.

Dated: October 19, 2016

Respectfully submitted,

_____
STEVEN S. MICHEL, *pro se*
New Mexico Bar #1809
2025 Senda de Andres
Santa Fe, NM 87501
(505) 690-8733
stevensmichel@comcast.net

E X H I B I T

CHARLES E. GRASSLEY, IOWA, CHAIRMAN

ORRIN G. HATCH, UTAH
JEFF SESSIONS, ALABAMA
LINDSEY O. GRAHAM, SOUTH CAROLINA
JOHN CORNYN, TEXAS
MICHAEL S. LEE, UTAH
TED CRUZ, TEXAS
JEFF FLAKE, ARIZONA
DAVID VITTER, LOUISIANA
DAVID A. PERDUE, GEORGIA
THOM TILLIS, NORTH CAROLINA

PATRICK J. LEAHY, VERMONT
DIANNE FEINSTEIN, CALIFORNIA
CHARLES E. SCHUMER, NEW YORK
RICHARD J. DURBIN, ILLINOIS
SHELDON WHITEHOUSE, RHODE ISLAND
AMY KLOBUCHAR, MINNESOTA
AL FRANKEN, MINNESOTA
CHRISTOPHER A. COONS, DELAWARE
RICHARD BLUMENTHAL, CONNECTICUT

# United States Senate

COMMITTEE ON THE JUDICIARY

WASHINGTON, DC 20510–6275

KOLAN L. DAVIS, *Chief Counsel and Staff Director*
KRISTINE J. LUCIUS, *Democratic Chief Counsel and Staff Director*

February 23, 2016

The Honorable Mitch McConnell
Senate Majority Leader
United States Senate
Washington, DC 20510

Dear Majority Leader McConnell,

As we write, we are in the midst of a great national debate over the course our country will take
in the coming years. The Presidential election is well underway. Americans have already begun
to cast their votes. As we mourn the tragic loss of Justice Antonin Scalia, and celebrate his life's
work, the American people are presented with an exceedingly rare opportunity to decide, in a
very real and concrete way, the direction the Court will take over the next generation. We
believe The People should have this opportunity.

Over the last few days, much has been written about the constitutional power to fill Supreme
Court vacancies, a great deal of it inaccurate. Article II, Section 2 of the Constitution is
clear. The President may nominate judges of the Supreme Court. But the power to grant, *or
withhold*, consent to such nominees rests exclusively with the United States Senate. This is not a
difficult or novel constitutional question. As Minority Leader Harry Reid observed in 2005,
"The duties of the Senate are set forth in the U.S. Constitution. Nowhere in that document does
it say the Senate has a duty to give the Presidential nominees a vote. It says appointments shall
be made with the advice and consent of the Senate. That is very different than saying every
nominee receives a vote."

We intend to exercise the constitutional power granted the Senate under Article II, Section 2 to
ensure the American people are not deprived of the opportunity to engage in a full and robust
debate over the type of jurist they wish to decide some of the most critical issues of our time. Not
since 1932 has the Senate confirmed in a presidential election year a Supreme Court nominee to
a vacancy arising in that year. And it is necessary to go even further back — to 1888 — in order
to find an election-year nominee who was nominated and confirmed under divided government,
as we have now.

Accordingly, given the particular circumstances under which this vacancy arises, we wish to
inform you of our intention to exercise our constitutional authority to withhold consent on any
nominee to the Supreme Court submitted by this President to fill Justice Scalia's
vacancy. Because our decision is based on constitutional principle and born of a necessity

The Honorable Mitch McConnell
Page Two


to protect the will of the American people, this Committee will not hold hearings on any
Supreme Court nominee until after our next President is sworn in on January 20, 2017.


Sincerely,


Charles E. Grassley
Chairman, Senate Judiciary Committee

Orrin G. Hatch
United States Senator


Jeff Sessions
United States Senator

Lindsey O. Graham
United States Senator


John Cornyn
United State Senator

Michael S. Lee
United States Senator


Ted Cruz
United States Senator

Jeff Flake
United States Senator

The Honorable Mitch McConnell
Page Three

David Vitter
United States Senator

David A. Perdue
United States Senator

Thom Tillis
United States Senator

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN S. MICHEL, *pro se*                )
                        *Plaintiff,*      )
        v.                                )
                                          )
ADDISON MITCHELL MCCONNELL, JR.,          )   Civil Action No.: 16-1729 (RC)
CHARLES ERNEST GRASSLEY, and              )
UNITED STATES SENATE,                     )
                        *Defendants.*     )
_____)

## AFFIDAVIT

STATE OF NEW MEXICO          )
                             )
COUNTY OF SANTA FE           )

STEVEN S. MICHEL, upon being duly sworn, states the following:

My name is Steven S. Michel. I am the Plaintiff (Petitioner) and I am capable of making this

affidavit. I have read the foregoing *Motion for Preliminary Injunction* and accompanying

*Memorandum of Points and Authorities,* and the facts stated therein are true and correct to

the best of my knowledge and belief.

Further Affiant sayeth not.

                                        _____
                                        STEVEN S. MICHEL

SUBSCRIBED AND SWORN to before me this 18th day of October, 2016.

My commission expires: February 4, 2018        _____
                                               Glenda M. Murphy, Notary

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN S. MICHEL, *pro se*             ) | |
|               *Plaintiff,*    ) | |
| v.                   ) | Civil Action No.: 16-1729 (RC) |

STEVEN S. MICHEL, *pro se*   )
        *Plaintiff,* )
 v.          ) **Civil Action No.: 16-1729 (RC)**
            )
**ADDISON MITCHELL MCCONNELL, JR.,** )
**CHARLES ERNEST GRASSLEY, and** )
**UNITED STATES SENATE,**   )
        *Defendants.* )
_____)

## PROPOSED FORM OF ORDER

WHERAS this matter came before the Court upon the Plaintiff's *Motion for Preliminary Injunction,* and the Court having considered that *Motion* and the *Petition* in this Case, the Court FINDS that a *Preliminary Injunction* should be issued.

IT IS, THEREFORE, ORDERED that a Preliminary Injunction is issued to Defendants McConnell, Grassley and the United States Senate, as follows: 1) requiring Senator McConnell to schedule a vote of the full Senate, before the 114th Congress adjourns, on whether to provide advice and consent for the nomination of Judge Merrick Garland to the United States Supreme Court, 2) requiring Senator Grassley to hold any necessary Judiciary Committee hearings prior to the vote of the full Senate, and 3) requiring that the Senate, as a body, vote on whether the Senate will provide its advice and consent to the nomination of Judge Garland to the United States Supreme Court.

IT IS FURTHER ORDERED that Defendants shall within seven (7) days provide the Court and the Plaintiff with a schedule of actions they will take to comply with this Order.

Date_____    _____
                RUDOLPH CONTRERAS
                United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2016, I telephonically contacted the Judge's clerk, U.S. Attorney and U.S. Senate counsel to inform each that I would be filing this *Motion for Preliminary Injunction* on October 19, 2016. In all instances I either spoke with counsel or an assistant, or left a message and a telephone number to reach me. On October 19, 2016, I served the foregoing *Motion for Preliminary Injunction* and *Memorandum of Points and Authorities,* by placing a true copy in the United States mail, with certified delivery, to the following persons. Courtesy copies were also provided by email as indicated:

Loretta E. Lynch, U.S. Attorney General
Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

United States Attorney's Office
Civil Process Clerk, Rm. E4207
555 Fourth Street, NW
Washington, D.C. 20530
*Email:* daniel.vanhorn@usdoj.gov

United States Senate
Dirksen Senate Office Building
Washington, D.C. 20510
*Email:* grant_vinik@legal.senate.gov

Senator Addison Mitchell McConnell
United States Senate
Washington, D.C. 20510

Senator Charles Ernest Grassley
United States Senate
Washington, D.C. 20510

_____
Steven S. Michel