# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN S. MICHEL, *pro se* ) | |
| *Plaintiff,* ) | |
| v. ) | |
| ) | |
| ADDISON MITCHELL MCCONNELL, JR., ) | Civil Action No.: 16-1729 (RC) |
| CHARLES ERNEST GRASSLEY, and ) | |
| UNITED STATES SENATE, ) | |
| *Defendants.* ) | |
| _____) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO MOTION TO DISMISS

STEVEN S. MICHEL, *pro se*
New Mexico State Bar # 1809
2025 Senda de Andres
Santa Fe, New Mexico 87501
(505) 690-8733
stevensmichel@comcast.net

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    1)  The Senate's contention that I must make an "exceptionally strong showing" to justify my requested relief is wrong, . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    2)  The law supports the likelihood of success on the merits of my *Complaint*. . . . .5

    3)  My injury is not generalized, and not shared by all U.S. citizens or voters. . . . . 7

    4)  The Senate's inaction on the Garland nomination *has* diminished the effectiveness of my 2012 and 2014 votes for New Mexico senators. . . . . . . . 12

    5)  Granting the relief I request would not have the judiciary impermissibly control the Senate's authority to provide advice and consent. . . . . . . . . . . . 12

    6)  The Speech or Debate Clause does *not* apply to the Senate's inaction. . . . . . . 17

    7)  The issues raised by my Complaint are *not* political questions. . . . . . . . . . .18

    8)  Judicially manageable standards can resolve this case. . . . . . . . . . . . . . . .19

    9)  If "disrespect" for a "coordinate branch" of government is present in this case, it is Defendants' disrespect for the Judiciary. . . . . . . . . . . . . . . 21

    10) The statutes I rely upon establish a cause of action. . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

**CASES:**

*Adams v. Vance*, 570 F.2d 950 (D.C. Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Baker v. Carr*, 369 U.S. 186 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Bond v. U.S.*, 564 U.S. 211 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Colgrove v. Green*, 328 U.S. 549 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Conn. Coalition for Justice in Educ. Funding, Inc. v. Rell,* 295 Conn. 240,
    990 A. 2d 206 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Dept. of Commerce et al. v. U.S. House of Representatives et al.*, 525 U.S. 316 (1999). . . . . .10

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491(1975). . . . . . . . . . . . . . . . . . . . . 16

*Ex parte Levitt*, 302 U.S. 633 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*Goldwater v. Carter*, 444 U.S. 996 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Gravel v. U.S.*, 408 U.S. 606 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Hastings v. U.S. Senate*, 1989-WL 122685 (D.C. Cir. Oct. 18, 1989). . . . . . . . . . . . . . .4, 5

*Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*INS v. Chadha*, 462 U.S. 919 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221 (1986). . . . . . . . . . . .18, 19

*Judicial Watch, Inc. v. U.S. Senate, 432* F.3ʳᵈ 359 (2005). . . . . . . . . . . . . . . . . . . . . . 15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

*Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1803). . . . . . . . . . . . . .18, 19, 21

*Morrison v. Olson*, 487 U.S. 654 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*National Labor Relations Board v. Noel Canning*,
    573 U.S.___, 134 S. Ct. 2550 (2014). . . . . . . . . . . . . . . . . . . . .1, 2, 5, 6, 13, 20, 21

*Nixon v. United States,* 506 U.S. 224 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Page v. Shelby,* 172 F. Supp. 23(D.D.C.), *aff'd* 172 F.3d 920 (D.C. Cir. 1998). . . . . . . . . . 8

*Pauling v. Eastland,* 288 F.2d 126 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*\*Powell v. McCormack*, 395 U.S. 486 (1969). . . . . . . . . . . . . . . . . . . . . . 16, 17, 22, 23, 24

*Public Citizen v. United States Department of Justice,* 491 U.S. 440 (1989). . . . . . . . . . .14

*Raines v. Byrd*, 521 U.S. 811 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*Stern v. Marshall*, 564 U.S. 462 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*The Pocket Veto Case,* 279 U.S. 655(1929). . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*United States v. Ballin*, 144 U.S. 1 (1892). . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*United States v. Choi*, 818 F. Supp. 79 (D.D.C. 2011). . . . . . . . . . . . . . . . . . . . . . .23

*United States v. Helstoski*, 442 U.S. 477 (1979). . . . . . . . . . . . . . . . . . . . . . . . . .16

*United States v. Munoz,* 495 U.S. 385 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Warth v. Seldin*, 422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579 (1952). . . . . . . . . . . . . . . . . . .19

*Zivotofsky ex rel. Zivotofsky v. Clinton,* 132 S. Ct. 1421(2012). . . . . . . . . . . . . . . . 18, 19


**CONSTITUTION, STATUTES AND RULES:**

U.S. CONSTITUTION, ARTICLE 1, §1; §7, CL.3. . . . . . . . . . . . . . . . . . . . . . . . . . . .18

U.S. CONSTITUTION, ARTICLE II, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 5

U.S. CONSTITUTION, AMENDMENT XVII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 11, 12

28 U.S.C. §1361. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C.  §1651. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

STANDING RULES OF THE SENATE, RULES XXV, XXXI. 113TH CONGRESS, 1ST SESSION.
DOCUMENT 113-18.  REVISED TO JANUARY 24, 2013. U.S. GOVERNMENT
PRINTING OFFICE. NOVEMBER 4, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

**OTHER:**

Fox, Lauren: "Senate No. 2 Won't Say if GOP Will Permanently Block Clinton's SCOTUS Noms," *Talking Points Memo* (TPM), November 2, 2016, http://talkingpointsmemo.com/dc/cornyn-won-t-say-if-gop-will-block-clinton-s-scotus-noms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 13

Hamilton, Madison, and Jay; *The Federalist* (1788). . . . . . . . . . . . . . . . . . . . . . . . . . 11

Renzin, Lee: "Advice, Consent, and Senate Inaction - Is Judicial Resolution Possible?"  N.Y.U. Law Review, Volume 73:1739, Nov.1998. . . . . . . . . . . . . . . . . . . . .14

United States Senate: http://www.senate.gov/pagelayout/reference/nominations/Nominations.htm . . . . . . . . . . . . 7

**INTRODUCTION**

Defendants'[1] *Motion to Dismiss* checks off the all the usual boxes to dismiss a lawsuit filed by a citizen against the Senate: standing, justiciability, speech and debate clause, political question doctrine, etc.  The *Motion* can be summarized as an argument that the Court should "just mind its own business."

But this is the Court's business.

The situation which is the subject of this lawsuit is of extraordinary importance. If a remedy is not available by this action, the trend-line of Senate obstruction leads to a dismantling of the Supreme Court by a small number of politically-motivated senators. Already, four United States Senators, two of whom sit on the Senate Judiciary Committee, have signaled the possibility of blocking *every* Supreme Court nomination made by a future President of an opposing political party.[2] Absent a Court determination that the Senate must participate in the Supreme Court nomination process, there is no mechanism to assure the continued viability of the U.S. Supreme Court.

At the end of his concurring opinion in *NLRB v. Canning[3],* which specifically dealt with the Constitution's Nominations and Appointments Clause[4], Justice Scalia wrote:

> It is not every day that we encounter a proper case or controversy requiring interpretation of the Constitution's structural provisions. Most of the time, the interpretation of those provisions is left to the political branches – which, in

---

[1] In this response, I will collectively refer to Senator McConnell, Senator Grassley and the U.S. Senate as "Defendants" or the "Senate"

[2] Fox, Lauren: "Senate No. 2 Won't Say if GOP Will Permanently Block Clinton's SCOTUS Noms," *Talking Points Memo* (TPM), November 2, 2016, http://talkingpointsmemo.com/dc/cornyn-won-t-say-if-gop-will-block-clinton-s-scotus-noms

[3] *National Labor Relations Board v. Noel Canning*, 573 U.S.___ , 134 S.Ct. 2550 (2014)

[4] U.S. Constitution, Article II, Sec.2

1

deciding how much respect to afford the constitutional text, often take their cues from this Court. We should therefore take every opportunity to affirm the primacy of the Constitution's enduring principles over the politics of the moment.[5]

This action provides the Court with an opportunity to establish its interpretation of an ambiguous Constitutional provision of enormous consequence. It relates specifically to the function and viability of the United States Supreme Court. That opportunity should not be dismissed.

**ARGUMENT**[6]

In its *Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Preliminary Injunction and in Support of Defendant's Motion to Dismiss* ("*Dismissal Memorandum*"), the Senate argues that:

1) To justify my requested relief, I must make an "exceptionally strong showing" that I am likely to prevail on the merits of my *Complaint*;

2) I am unlikely to prevail on the merits of my Complaint;

3) My claim that the effectiveness of my vote has been diminished is a "generalized grievance that does not establish injury in fact;"

4) There is no causal link between the Senate's inaction on the Garland nomination and the diminished effectiveness of my 2012 and 2014 votes for New Mexico senators;

---

[5] *NLRB v. Canning* at 2617

[6] On October 31, Defendants filed arguments in a single *Memorandum of Points and Authorities* that combined their *Opposition to Plaintiff's Motion for Preliminary Injunction* with support for their *Motion to Dismiss* (ECF 16 and 17). Given the overlap of issues between these dual efforts, I understand the rationale behind such a combined pleading. On the other hand, the combined pleading puts me in the difficult position of sorting out which arguments apply to which effort – which is not completely clear.  This *Memorandum in Opposition to Motion to Dismiss,* therefore, addresses the entirety of the arguments contained in the Senate's combined pleading – without attempting to distinguish Defendants' *Opposition* from Defendants' *Motion*. The exception to this is Section II of Defendants' *Memorandum,* which appears to relate only to the *Motion for Preliminary Injunction,* and which therefore I am not specifically responding to at this time.

5) Separation of power principles preclude the judiciary from controlling the Senate's authority to advise and consent;

6) The Speech or Debate Clause "affords the Senate and its Members absolute immunity for all conduct arising out of 'matters which the Constitution places within the jurisdiction of either House;'"

7) My claims are nonjusticiable under the political question doctrine because the advice and consent role is committed to the Senate alone;

8) There is no judicially manageable standard for resolving this case;

9) Granting the relief I request would "deeply disrespect the constitutional role of a coordinate branch of government"; and

10) The statutes I rely upon do not establish a cause of action.[7]

Contrary to Defendants' claims, I am not asking the Court to disregard precedent and law in order to impose a remedy that is not otherwise available. The law and facts, as applied to the obstructed nomination of Judge Garland, fit well within long-established legal precedent for remedying this perilous situation that threatens our democracy.

Defendants mischaracterize my claims and requested relief, and present arguments that defy common sense:  Denying my *Complaint*[8] for the reasons argued by Defendants would allow one constitutionally-established branch of government to extinguish another.

Contrary to the claims made in Defendants' *Motion to Dismiss*, my *Complaint*  and *Motion for Preliminary Injunction* should not be held to an "extraordinarily high standard." The facts and law underlying this action support the likelihood of success on the merits. The diminishment of my vote's effectiveness is not generalized, and not shared by all U.S. citizens or voters, and Senate inaction on the Garland nomination *has* diminished the

---

[7] *Dismissal Motion* at pp. 2-3

[8] To avoid confusion in the case, I refer to my *Petition* as the "Complaint"

effectiveness of my 2012 and 2014 votes for New Mexico senators. Granting the relief I request would not have the Judiciary impermissibly control the Senate's authority to provide advice and consent. The Speech or Debate Clause does *not* apply to the Senate's inaction, and the issues raised by my Complaint are *not* political questions. There exist judicially manageable standards to resolve this case and, if "disrespect" for a "coordinate branch" of government is present in this case, it is Defendants' disrespect for the Judiciary. My case presents a lawful cause of action.

 I will address each of these points.

### 1) The Senate's contention that I must make an "exceptionally strong showing" to justify my requested relief is wrong.

 The Senate has argued that I must make an "exceptionally strong showing on the relevant factors" to justify a preliminary injunction. The Senate cites the D.C. Circuit's decision in *Adams v. Vance* and *Hastings v. U.S.*[9] as holding that this heightened standard applies because the "requested immediate injunctive relief deeply intrudes into the core concerns of [another] branch."  These cases, however, involved different types of situation than the one I have presented. In *Adams*, the Court was asked to order the Secretary of State to file an objection with the International Whaling Commission. Although that objection could be later withdrawn, the D.C. Circuit overturned the injunction because of concern that even filing an objection could upset the "delicacies of diplomatic negotiations," which the Court lacked the capability to evaluate. It was that international sensitivity that

---

[9] *Adams v. Vance*, 570 F.2d 950, 955-6 (D.C. Cir. 1978), *Hastings v. U.S. Senate*, 1989-WL 122685 (D.C. Cir. Oct. 18, 1989).

caused the Court to reject the requested injunction. In *Hastings*, there was a challenge to holding committee hearings in an impeachment case.

My Compliant, however, does not ask for a specific outcome, as in *Adams*, nor am I seeking to halt a committee process as in *Hastings.* If I had requested the Court to instruct the Senate to *confirm* Judge Garland, or to bypass the Committee process, then perhaps *Adams* and *Hastings* might apply. But I am not. I am asking the Court only to have the Senate *participate* in the nomination and appointment process and make a decision one way or the other, as I believe the Senate is constitutionally required to do, and as it has historically done.

2) **The law supports the likelihood of success on the merits of my *Complaint*.**

In addition to the points and authorities I provided with my *Motion for Preliminary Injunction*, the recent Supreme Court case of *NLRB v. Canning*[10] also supports the merits of my claims.

In *NLRB v. Canning* the Court was tasked with interpreting the Recess Appointments Clause of the Constitution, which is part of the same Nominations and Appointments section[11] that is at issue in this case. A question before the Court was: When does a Senate adjournment becomes a "recess" that triggers the President's power to temporarily appoint officials without Senate advice and consent? The Constitutional language surrounding recess appointments was sparse and ambiguous. In its decision, the Court first made clear that having Senate approval for appointments was the norm:

---

[10] *National Labor Relations Board v. Noel Canning*, 573 U.S.___, 134 S.Ct. 2550 (2014)

[11] U.S. Constitution, Article II, Section 2

The Federalist Papers make clear that the Founders intended this method of appointment, requiring Senate approval, to be the norm (at least for principle officers).[12]

Then, importantly, the Court explained that "*in interpreting the Clause, we put significant weight upon historical practice* (emphasis in original)."[13] The Court

confirmed that "[l]ong settled and established practice is a consideration of great weight in a proper interpretation of constitutional provisions" regulating the relationship between Congress and the President. *The Pocket Veto Case,* 279 U.S. 655, 689 (1929).[14]

The Court also held:

That principle is neither new nor controversial. As James Madison wrote, it "was foreseen at the birth of the Constitution, that difficulties and differences of opinion might occasionally arise in expounding terms & phrases necessarily used in such a charter . . . and that it might require a regular course of practice to liquidate & settle the meaning of some of them." . . . . And our cases have continually confirmed Madison's view.[15]

The Court then looked to the history of use of the Recess Appointments Clause, from the Founding to the present, to determine when an absence would became a "recess":

. . .  the President has consistently and frequently interpreted the word "recess" to apply to intra-session recesses, and has acted on that interpretation. The Senate as a body has done nothing to deny the validity of this practice for at least three-quarters of a century. And three-quarters of a century of settled practice is long enough to entitle a practice to "great weight in a proper interpretation" of the constitutional provision. *The Pocket Veto Case,* 279 U.S., at 689.

This same type of historical analysis, I believe, demonstrates that the Nominations and Appointments Clause requires full Senate participation that either confirms or rejects a

---

[12] *NLRB* at 2558

[13] *NLRB* at 2559

[14] *NLRB* at 2559

[15] *NLRB* at 2560

nominee within a relatively short period of time. In other words, it supports the injunction, declaratory judgment and mandamus that I am seeking.

The Exhibit[16] to this *Memorandum* contains the U.S. Senate's compilation of the disposition of every Supreme Court nomination from 1789 until the present. During that time there were 161 nominations. Of those, only 9 nominations received "no action," and of those, four nominees were nevertheless confirmed or refused within months. Of the remaining five, one vacancy in 1866 was eliminated because the seat was abolished and the other four occurred in the short period between 1844 and 1853. In sum, but for a short *ante bellum* period in the mid-1800s, the practice of the Senate has always been to consider and act expeditiously to confirm or reject a Supreme Court nominee.  This history is at least as consistent and compelling as the history relied upon by the *NLRB* Court, and demonstrates that considering and acting on Supreme Court nominations within a reasonable time is constitutionally required.


### 3)  **My injury is not generalized, and not shared by all U.S. citizens or voters.**

The Senate argues that my Complaint presents a "generalized grievance" that does not confer jurisdiction to the Court. Referencing *Lujan[17]* and other holdings, the Senate argues that a harm to "every citizen's interest" that affects me and the "public at large" identically is not a particularized grievance sufficient to establish standing. Citing *Ex parte Levitt*,[18]  Defendants also argue that individual senators lack standing to challenge inaction

---

[16] U.S. Senate:  http://www.senate.gov/pagelayout/reference/nominations/Nominations.htm

[17] *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

[18] *Ex parte Levitt*, 302 U.S.633 (1937)

on the Garland nomination. *Raines v. Byrd*[19] is cited by Defendants to show that individual senators would not have standing based upon their loss of political power. Finally, the Senate argues that my claims cannot be sustained, based upon the reasoning of *Page v. Shelby*,[20] which held that even though the Senate committee system deprives some senators of a voice in the passage of legislation, that is insufficient to establish standing. The situation described in my *Complaint*, and which I seek to remedy, is distinguishable from all of these cases cited by Defendants.

I recognize that, under *Lujan,* my injury must be particularized and not shared equally with the general citizenry. The injury I have sustained meets that standard. Eleven members of the Senate Judiciary Committee, to which judicial nominations are first considered under Senate rules,[21] have refused to hold hearings on any Supreme Court nomination made by President Obama. Senate Leader McConnell has refused Senate floor action. These decisions were made with almost a year left in the President's four-year term. The result has been to withhold consent to the Garland nomination without ever having presented the question to the full Senate, and allowing the Senate to act.

Put another way, 12 senators (11 Judiciary Committee members and Senator McConnell) have wielded a power that should require the vote of 51 senators to accomplish.  My two senators from New Mexico have been provided zero votes in that process. At the same time, citizens from Utah and Texas, each with both of their senators

---

[19] *Raines v. Byrd*, 521 U.S.811 (1997)

[20] *Page v. Shelby,* 172 F. Supp. 23(D.D.C.), *aff'd* 172 F.3d 920 (D.C. Cir. 1998)

[21] *Standing Rules of the Senate*, Rules XXV and XXXI, 113th Congress, 1st Session, Doc. 113-18, Rev. to January 24, 2013; U.S. Government Printing Office, Nov. 4, 2013

sitting on the Judiciary Committee, have had their Senators assigned far more than the 1/100 voting power ("one vote")[22] which each senator is allotted by the Constitution. Defendants McConnell and Grassley have also been provided extraordinary voting power by virtue of their respective leadership and chairmanship. These activities have eliminated the effectiveness of my vote for United States senators in the Supreme Court nomination and appointment process.

Defendants gloss over the distinction the *Lujan*[23] court drew between injuries to a plaintiff versus injury to third parties.  *Lujan* involved a group who asserted standing based on injury to *other* individuals, which requires a more difficult showing than where, as in my case, the injury is to me. The Court explained:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or foregone action) at issue.  If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed.[24]

My injury, and claim of standing, are based upon rights that I have under the 17th Amendment to vote for United States senators, and to have each of those senators represent my interests with "one vote" in the Senate. The injury is to me. The Supreme

---

[22] U.S. Constitution, Amendment XVII

[23] *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

[24] *Lujan* at  561-562 (1992) (emphasis added)

Court has expressly held "that voters who allege facts showing disadvantage to themselves as individuals have standing to sue."[25] In *Department of Commerce et al. v. U.S. House of Representatives et al.*, a case involving the Constitution's "Census Clause" and voter standing, the Supreme Court held:

> Appellee Hoffmeister's expected loss of a Representative to the United States Congress undoubtedly satisfies the injury-in-fact requirement of Article III standing. In the context of apportionment, we have held that voters have standing to challenge an apportionment statute because "[t]hey are asserting 'a plain, direct and adequate interest in maintaining the effectiveness of their votes.'"[26]

The fact that others may also have been injured by the Defendants behavior does not preclude standing.[27]  The importance of individuals, such as myself, to be provided standing where separation of power concerns are raised, has also been frequently noted. The Supreme Court explained:

> Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others.  Yet the dynamic between and among the branches is not the only object of the Constitution's concern.  The structural principles secured by the separation of powers protect the individual as well.  In the precedents of this Court, the claims of individuals – not of Government departments – have been the principal source of judicial decisions concerning separation of powers and checks and balances.[28]

---

[25] *Baker v. Carr* , 369 U.S. 186, 206 (1962) referring to its holding in *Colgrove v. Green*, 328 U.S. 549 (1946) and then to several Supreme Court decisions following *Colgrove* recognizing standing of individual voters.

[26] *Department of Commerce et al. v. United States House of Representatives et al.*, 525 U.S. 316, 331-2 (1999)

[27] *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

[28] *Bond v. United States,* 564 U.S. 211 at 222

It is also important to recognize that my standing does not succumb to the constraint suggested in *Page v. Shelby*, which dealt with diminished voting power in the *passage of legislation*. The distinction is that the Constitution imposes neither a requirement that legislation be passed, nor that it even be considered. The law-making function of the Senate, however, is different than the "advice and consent" function, which is separately assigned to the Senate by the Constitution and which is not discretionary. Therefore, while an injury stemming from unpassed legislation might be too speculative to establish standing, the injury of eliminating my Senate representation in a matter that the Senate must, as a body, participate in and vote on, is not speculative at all.

Because the Senate must vote on Supreme Court nominees, and because 12 senators – none of whom are from New Mexico - have procedurally assumed the voting power of 51, I have been deprived of the 17th Amendment one-vote-per-senator representation in the Senate that I am entitled to in Judge Garland's confirmation process.  Unlike the passage of legislation, my injury does not depend on the success or failure of Judge Garland's nomination. My injury is the deprivation of my constitutionally-vested representation in that confirmation process. That deprivation is not trivial. As identified in the *Federalist Papers*, the Senate is to be a deliberative body where senators share their views and develop well-reasoned outcomes.[29] That deliberative process is destroyed when 12 senators procedurally block the other 88 senators from participating.

The Senate's *Raines* and *ex parte Levitt* argument, that individual senators lack injury and standing to challenge inaction on the Garland nomination, is a straw-man.  I have not based my claims on any injury to senators.

---

[29] See *The Federalist* Nos. 70,76,77

**4) The Senate's inaction on the Garland nomination *has* diminished the effectiveness of my 2012 and 2014 votes for New Mexico senators.**

Defendants claim that there is no causation between denying my elected Senators a vote in the consideration of Judge Garland's nomination, and the effectiveness of my vote in the Senate elections of 2012 and 2014. According to the Defendants, the effectiveness of my vote for a senator was established by the fact that my vote was counted in the election. Their argument is a shell game.

By the Senate's reasoning, my Senate vote would maintain its full value even if the Senator I voted for was physically locked out of the Senate for the entirety of the six-year term. Defendants ignore the second part of the Constitution's 17th Amendment, which entitles citizens to elect senators *that are each have one vote.*

**5) Granting the relief I request would not have the judiciary impermissibly control the Senate's authority to provide advice and consent.**

Defendants argue that the courts may not insert themselves into the Senate's role of advice and consent. The Senate argues that an order prescribing the "timing for its consideration of a pending legislative matter" violates separation of power requirements. The Senate, however, overlooks that the remedy I have requested is in fact consistent with Senate rules, and how the Senate has historically administered Supreme Court nominations. Those rules call for nominations to be referred to the Judiciary Committee, which determines whether to recommend that a nominee be confirmed or rejected.  The nomination then proceeds to the Senate floor, where the entire Senate votes on whether to

confirm or reject a nominee.[30] Nowhere do Senate rules suggest that a nomination may be

ignored and never brought to the Senate floor for debate – as Defendants stated they will

with any Supreme Court nomination President Obama may make during the final quarter

of his term. If Defendants' position is sustained, the reasoning would allow a small group of

senators to block consideration of every nomination of a future President – which some

Senators have already suggested should be done.[31]

> In *NLRB v. Canning* the Court explained that the
>
> Constitution explicitly empowers the Senate to "determine the Rules of its
> Proceedings." Art. I, § 5, cl. 2. And we have held that "all matters of method are open
> to the determination" of the Senate, as long as there is "a reasonable relation
> between the mode or method of proceeding established by the rule and the result
> which is sought to be attained" and the rule does not "ignore constitutional
> restraints or violate fundamental rights." *United States v. Ballin,* 144 U.S. 1, 5, 12 S.
> Ct. 507, 36 L. Ed. 321 (1892).[32]

The Senate's rules cannot extend to preventing constitutionally required functions

altogether, as Defendants contend. The notion that the Senate's "rules of proceedings"

include allowing a small number of senators to block a proceeding from occurring at all,

contrary to constitutional requirements, defies reason. A blanket refusal to act is not a

"method" and is not a "rule of proceeding."

---

[30] *Standing Rules of the Senate*, Rules XXV and XXXI, 113th Congress, 1st Session, Doc. 113-18, Rev. to
January 24, 2013; U.S. Government Printing Office, Nov. 4, 2013

[31] Senators McCain, Burr, Cruz and Cornyn. See, Fox, Lauren: "Senate No. 2 Won't Say if GOP Will
Permanently Block Clinton's SCOTUS Noms," *Talking Points Memo* (TPM), November 2, 2016,
http://talkingpointsmemo.com/dc/cornyn-won-t-say-if-gop-will-block-clinton-s-scotus-noms

[32] *NLRB v. Canning*, 134 S.Ct. 2550, 2574

As I referenced in my *Complaint*, a New York University Law Review article by Lee Renzin in 1998 pointed out that failing to redress Senate inaction on judicial nominations compromised, rather than preserved, the constitutionally-required separation of powers:

> The characteristics of the Senate that ostensibly enable it to make a vital contribution to the appointment process are rendered moot when the full Senate does not vote on nominees. This phenomenon does not comport with the Framers' desire that "advice and consent" – an integral component of the system of separation of powers – be implemented in a manner that would foster that balance.... In addition, the prospect of the Senate having the unilateral ability to dismantle the federal judiciary without a "check" – either by the people, through procedures designed to ensure accountability, or by the full Congress and the President, via bicameralism and presentment – is one which raises serious separation of power concerns. Simply put, Senators not only are infringing on the power of the other two branches, but they are doing so in a manner that robs the public of an opportunity to determine how their particular Senator feels about the nominees that reach the Senate. [33]

Unlike other situations, where instructing the Senate to act could be viewed as compromising the separation of power, by this action I am seeking relief that would *restore* the separation of power.  As Justice Kennedy said in *Public Citizen*, "It remains one of the most vital functions of this Court to police with care the separation of the governing powers."[34] In his dissent in *Morrison v. Olson,* Justice Scalia argued that, in the context of a separation of powers challenge to an action of Congress, the Court does *not* owe Congress the same level of deference that would be afforded when reviewing legislation.[35]

---

[33] Renzin, Lee: "Advice, Consent, and Senate Inaction - Is Judicial Resolution Possible?"  N.Y.U. Law Review, Volume 73:1739, Nov.1998 at 1757 (citations omitted)

[34] *Public Citizen v. United States Department of Justice,* 491 U.S. 440, 468 (1989) (Kennedy, J. concurring)

[35] *Morrison v. Olson,* 487 U.S. 654, 704-5 (1988) (Scalia, J., dissenting)

Finally, the case law cited by Defendants involves situations very different from the one at hand. *Pauling*[36] involved the Court being asked to issue a declaratory order in anticipation of a Senate action that had not occurred.  Here, Defendants have made clear that they will *never* consider *any* nomination of President Obama. In *Hearst*[37] the Court was asked to rule on a committee's ability to seek and obtain information – managing in advance the committee's activities. I, however, am not asking the Court manage what a committee considers in its deliberations. I am asking the Court to interpret the Constitution, and instruct the Senate *to fulfill* its Constitutionally-required role of determining, as a body, whether to confirm or reject a Supreme Court nominee – something it has refused to do.

Furthermore, Defendants neglect to relate that *Hearst* also ruled: "Nothing is better settled than that each of the three great departments of government shall be independent and not subject to be controlled directly or indirectly by either of the others."  Defendants' refusal to fulfill its role in the nomination and appointment process, and thereby starve the judiciary, including the Supreme Court, of necessary judges to fulfill its judicial function, is the Senate impermissibly controlling, and weakening, the judiciary.

In *Judicial Watch*[38] the language quoted by Defendants about the Court's reluctance to address Senate rules was not a basis for the Court's decision, which turned on the plaintiff's inability to establish an injury. Defendants' remaining authorities, lower court

---

[36] *Pauling v. Eastland,* 288 F.2d 126 (1960)

[37] *Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936)

[38] *Judicial Watch, Inc. v. U.S. Senate, 432* F.3rd 359 (2005)

rulings questioning the Court's power to oversee Senate action, are superseded by *Powell v. McCormack,* in which the Supreme Court determined that the House of Representatives could not exclude a member based upon qualifications other than those prescribed by the Constitution,[39] and *United States v. Ballin,* where the Supreme Court found that the "[C]onstitution empowers each house to determine its rules of proceedings. It may not by its rules ignore constitutional restraints or violate fundamental rights."[40]

### 6) The Speech or Debate Clause does *not* apply to the Senate's inaction.

Defendants argue that my *Complaint* is precluded by the Speech or Debate Clause. Their arguments were addressed in my *Complaint* and, as they acknowledge, that clause only applies to activities which "fall within the 'sphere of legitimate legislative activity.'"[41] Activity or inactivity which is contrary to Constitutional requirements, such as refusing to participate in judicial nominations and appointments, is not "legitimate." Furthermore, my *Complaint* is aimed at a lack of legislative action, and the Speech or Debate Clause does not apply to a *refusal* to act: "it is clear from the language of the Clause that protection extends only to an act that has already been performed."[42]

Notably, the Supreme Court explained in *Gravel v. United States* that the Speech or Debate Clause protections are limited:

---

[39] *Powell v. McCormack*, 395 U.S. 486, 550 (1969)

[40] *United States v. Ballin*, 144 U.S. 1, 5 (1892)

[41] *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 at 501 (1975)

[42] *United States v. Helstoski*, 442 U.S. 477, 490 (1979)

Legislative acts are not all-encompassing.  The heart of the Clause is speech or
debate in either House.  Insofar as the Clause is construed to reach other matters,
they must be an integral part of the deliberative and communicative processes by
which Members participate in committee and House proceedings with respect to the
consideration and passage or rejection of proposed legislation or with respect to
other matters which the Constitution places within the jurisdiction of either House.
As the Court of Appeals put it, the courts have extended the privilege to matters
beyond pure speech and debate in either House, but "only when necessary to
prevent indirect impairment of such deliberations.[43]

However, even if this Court disagrees and determines that the Speech or Debate

Clause bars this action against Senators McConnell and Grassley, the Court may still review

the propriety of, and act on, the *Senate's* failure to participate in the Supreme Court judicial

nomination and appointment process. The Speech or Debate Clause applies only to

individuals and does not apply to an action against the Senate. [44]  It is also important to note

that, in *Powell,* the Court left open the question of whether the Speech or Debate Clause

would bar an action against individual members of Congress if no other remedy was

available.[45]


**7)  The issues raised by my Complaint are *not* political questions.**

Defendants argue that my *Complaint* presents a non-justiciable "political question"

which the Court should refrain from deciding. Defendants confuse deciding a "political

---

[43] *Gravel* at 625.

[44] *Powell* at 505-6; see also *Eastland v. United States Serviceman's Fund,* 421 U.S. 491, 513 (1975)
(Marshall, J. concurring)

[45] *Powell* at note 26: "Given our disposition of this issue, we need not decide whether, under the
Speech or Debate Clause petitioners would be entitled to maintain this action solely against
members of Congress where no agents participated in the challenged action and no other remedy
was available."

question" with interpreting the Constitution. Although Defendants argue that participation

in the Supreme Court appointment process is entirely within the Senate's discretion, this is

exactly the issue which I am asking the Court to decide. Specifically, whether the Senate's

discretion to manage its business allows it to ignore Supreme Court nominations and

impair the judicial branch of government.[46]

The political question doctrine rests in part on mutual respect among the three

branches of government. [47] The doctrine is a "narrow exception" to the rule that the

judiciary has a responsibility to decide cases properly before it.[48] While the resolution of

issues involving a coordinate branch of government will sometimes have political

implications, the judicial branch must not neglect its duty to "say what the law is"[49] merely

because its decision may have "significant political overtones."[50] The Supreme Court has

repeatedly rejected the view that a claim is nonjusticiable simply because a court is called

upon to resolve the propriety or constitutionality of the act of another branch of

---

[46] It is also important to recognize that Defendants' blocking of Senate action has effectively reduced the number on the Supreme Court from nine to eight – at least for the time during which no nomination would be considered. This type of de facto one-house repeal of legislation establishing the size of the judiciary violates the constitutional requirements of bicameralism (2 houses) and presentment (to the President for signature) for laws to take effect. U.S. Constitution, Article 1, §1; §7, cl.3; *INS v. Chadha*, 462 U.S. 919, 952, 957-9 (1983)

[47] *Goldwater v. Carter*, 444 U.S. 996, 1000 (1979) (Powell, J., concurring); *Nixon v. United States,* 506 U.S. 224, 253 (1993) (Souter, J., concurring in judgment); *Conn. Coalition for Justice in Educ. Funding, Inc. v. Rell,* 295 Conn. 240, 255, 990 A. 2d 206 (2010).

[48] *Zivotofsky ex rel. Zivotofsky v. Clinton,* 132 S. Ct. 1421, 1427 (2012).

[49] *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60(1803),

[50] *Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 230 (1986) (the interpretation of statutory text is "one of the Judiciary's characteristic roles.").

government.[51] A blanket rule against judicial "interference," which Defendants seem to advocate, threatens the independence of the judiciary and its co-equal and critical role in protecting against legislative encroachments on the people's rights and freedoms. [52] The courts are "bulwarks of a limited Constitution, against Legislative encroachment."[53]

In determining that there was no political question barring the courts from deciding the *Powell* case, the court defended its established role:

> Our system of government requires the federal courts on occasion to interpret the Constitution in a manner at variance with the construction given the document by another branch. The alleged conflict that such an adjudication may cause cannot justify the courts' avoiding their constitutional responsibility.... [I]t is the responsibility of this Court to act as the ultimate interpreter of the Constitution. *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 2 L. Ed. 60 (1803).[54]

### 8) Judicially manageable standards can resolve this case.

The Senate argues that the judiciary is unable to establish standards that could adequately remedy the harm I have identified. The Senate maintains that the Constitution provides no time limit for undertaking its advice and consent role, and therefore none can be judicially crafted. The Senate is wrong.

---

[51] *Zivotofsky,* 132 S. Ct. at 1432 (Sotomayor, J., concurring)(citing *United States v. Munoz,* 495 U.S. 385, 390-91 (1990)); *see also Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579 (1952) (noting that a categorical rule of nonjusticiability because of possible interference with executive power, even in times of war, has never existed).

[52] *Stern v. Marshall,* 564 U.S. 462, 483 (2011) (Roberts, C.J.) (explaining that the framers demanded that the judiciary remain "truly distinct from both the legislature and the executive")

[53] Hamilton, *The Federalist* No. 78.

[54] *Powell* at 549.

First, even if one assumed that a specific time frame for required action might be difficult to discern, the Senate's position that has the power to *never* consider a Presidential nomination, as it has done with the Garland nomination, is incorrect. A constitutional interpretation that, by extension, would allow a small minority of senators to dismantle the judiciary cannot prevail.

Second, the Supreme Court *has* established judicially manageable standards to address Constitutional timing issues similar to the one at issue in this case. The Senate's argument focuses on my request that the Court require the Senate to act within a "reasonable time" as being unmanageable. But a "reasonable time" is a timeframe well within the Court's ability to discern from historical practice.

*NLRB v. Canning* laid a foundation for concluding that the Court can and should look to historical practice to determine what a "reasonable time" is for the Senate to act. The Court held that:

> [T]he [Recess] Clause ensures that the President and Senate always have at least a full session to go through the nomination and confirmation process. *That process may take several months* (emphasis added).[55]

Aside from recognizing the obvious norm and tradition that judicial nominations and appointments are to be resolved within several months, the *NLRB* Court also looked to when the Recess Appointments Clause had been historically invoked to ascertain how long a recess should continue before triggering the President's unilateral recess appointment power:

> We therefor conclude, in light of historical practice, that a recess of more than 3 days, but less than 10 days is presumptively too short to fall within the Clause. We add the word "presumptively" to leave open the possibility that some very unusual circumstance – a national catastrophe, for instance, that renders the Senate

---

[55] *NLRB* at 17

unavailable but calls for an urgent response – could demand the exercise of the recess-appointment power during a shorter break. (It should go without saying – except that JUSTICE SCALIA compels us to say it – that political opposition would not qualify as an unusual circumstance.)[56]

By the same token, the Exhibit to this *Memorandum*, which details the history of Supreme Court nominations in the United States, should provide ample information for the Court to establish a presumptively reasonable time. Given that the longest nomination process prior to Judge Garland was 126 days, that would seem to be the outside limit to a presumptively "reasonable time." At this juncture, however, in response to Defendants' dismissal motion and preliminary injunction opposition, all the Court needs to decide is that *never* is not permissible.

### 9) If "disrespect" for a "coordinate branch" of government is present in this case, it is Defendants' disrespect for the Judiciary.

Defendants argue that it would be disrespectful to the Senate for the Court to engage in the review requested by my *Complaint.* Defendants confuse the roles of the Senate and Judiciary. While the Senate may determine how to conduct its business, that conduct cannot conflict with the Constitution. Resolving my *Complaint* would not, as Defendants claim, "call into question the application of every Senate or House standing rule that interferes with or delays [legislative activity]." It is the Court's province to interpret the Constitution[57] and my *Complaint* simply asks the Court to do that, and enforce that

---

[56] *NLRB* at 21

[57] *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 2 L. Ed. 60 (1803)

interpretation to the extent needed. It is up to the Senate to determine whether or what rule changes, if any, might be required to conform to the Constitution.

*Powell v. McCormack* explained the issue well:

> Powell's right to sit would require no more than an interpretation of the Constitution. Such a determination falls within the traditional role accorded courts to interpret the law, and does not involve a 'lack of the respect due (a) coordinate (branch) of government, nor does it involve an 'initial policy determination of a kind clearly for nonjudicial discretion.' *Baker v. Carr*, 369 U.S. 217, 82 S.Ct. 691 at 710. Our system of government requires that federal courts on occasion interpret the Constitution in a manner at variance with the construction given the document by another branch. The alleged conflict that such an adjudication may cause cannot justify the courts' avoiding their constitutional responsibility.[58]

As I stated in my *Complaint,* the Senate's refusal to even consider whether to provide "advice and consent" for a duly nominated justice for the Supreme Court has created a constitutional crisis that threatens the balance and separation of power among our three branches of government. The Senate's refusal has divested the President of his constitutional power to appoint justices to the Supreme Court, has divested individual senators and their constituents of each senator's right to evaluate and vote on whether to confirm a Supreme Court nominee, and has compromised the viability and strength of the judiciary.

Granting the relief requested in my *Complaint* and *Motion for Preliminary Injunction* would only have the Court interpreting the Constitution to require the Senate, *as a body*, to decide whether to confirm or reject Supreme Court nominees. Without that required Senate participation, our system of government does not work.

---

[58] *Powell v. McCormack*, 395 U.S. 486, 548-9 (1969)

**10)      The statutes I rely upon establish a cause of action.**

Defendants assert that neither the All Writs Act nor the federal mandamus statute[59] provide a cause of action. Defendants cite the district court holding in *U.S. v. Choi*[60] to argue that the mandamus statute does not apply to the legislative branch, and that the All Writs Act only applies to appellate jurisdiction. However, the federal mandamus statute (28 U.S.C. §1361) makes no mention of not applying to the legislative branch, and the All Writs Act (28 U.S.C. §1651) is not limited to appellate jurisdiction: "The Supreme Court and *all courts* established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law (emphasis added)." *Powell v. McCormack* specifically recognized the possibility of mandamus being applied to a house of Congress.[61]

Injunctive relief is also presumably available under 42 U.S.C. §1983, which provides a civil action for a deprivation of any legal rights by any person, and specifically allows for equitable and injunctive relief.

Even if mandamus were precluded, however, that provides no basis to dismiss this action, which also requested declaratory relief. *Powell* made clear that, regardless of the availability of "coercive relief," declaratory relief was well within the province of the district courts:

> We need express no opinion about the appropriateness of coercive relief in this case, for petitioners sought a declaratory judgment, a form of relief the District

---

[59] 28 U.S.C. §1651 and 28 U.S.C. §1361

[60] *United States v. Choi*, 818 F. Supp. 79 (D.D.C. 2011)

[61] "Petitioners seek additional forms of equitable relief, including mandamus for the release of petitioner Powell's back pay. The propriety of such remedies, however, is more appropriately considered in the first instance by the courts below." *Powell* at 550.

Court could have issued. The Declaratory Judgment Act, 28 U.S.C. §2201 provides that a district court may 'declare the rights *** of any interested party *** whether or not further relief is or could be sought.'[62]

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff prays for a court order denying Defendants' *Motion to Dismiss* and granting such other and further relief as the Court deems just and proper.

I verify under penalty of perjury that the foregoing is true and correct. Executed on November 8, 2016.

Respectfully submitted,

_____
STEVEN S. MICHEL, *pro se*
New Mexico Bar #1809
2025 Senda de Andres
Santa Fe, NM 87501
(505) 690-8733
stevensmichel@comcast.net

---

[62] *Powell* at 517.

E X H I B I T



Find Your Senators [GO]

[GO]

SENATORS | COMMITTEES | LEGISLATION & RECORDS | ART & HISTORY | VISITORS | REFERENCE

## Supreme Court Nominations, present-1789 (1789-present)


Printer Friendly

The Constitution requires the president to submit nominations to the Senate for its advice and consent. Since the Supreme Court was established in 1789, presidents have submitted 161 nominations for the Court, including those for chief justice. Of this total, 124 were confirmed (7 declined to serve). This chart lists nominations officially submitted to the Senate.

- Virtual Reference Desk
- Statistics & Lists
- Bibliographies
- How To...
- Is It True That...
- Glossary
- Senate Organization
- The Constitution

| Nominee | To Replace | Nominated | Vote | Result & Date |
|---|---|---|---|---|
| **President Barack Obama** | | | | |
| Merrick Garland | Scalia | Mar 16, 2016 | | |
| Elena Kagan | Stevens | May 10, 2010 | 63-37 No. 229 | C Aug 5, 2010 |
| Sonia Sotomayor | Souter | Jun 1, 2009 | 68-31 No. 262 | C Aug 6, 2009 |
| **President George W. Bush** | | | | |
| Samuel Alito, Jr. | O'Connor | Nov 10, 2005 | 58-42 No. 2 | C Jan 31, 2006 |
| Harriet Miers | O'Connor | Oct 7, 2005 | | W Oct 28, 2005 |
| John Roberts, Jr.[1] | Rehnquist | Sep 6, 2005 | 78-22 No. 245 | C Sep 29, 2005 |
| John Roberts, Jr. | O'Connor | Jul 29, 2005 | | W Sep 6, 2005 |
| **President Bill Clinton** | | | | |
| Stephen Breyer | Blackmun | May 17, 1994 | 87-9 No. 242 | C Jul 29, 1994 |
| Ruth Bader Ginsburg | White | Jun 14, 1993 | 96-3 No. 232 | C Aug 3, 1993 |
| **President George H.W. Bush** | | | | |
| Clarence Thomas | Marshall | Jul 8, 1991 | 52-48 No. 220 | C Oct 15, 1991 |
| David Souter | Brennan | Jul 25, 1990 | 90-9 No. 259 | C Oct 2, 1990 |
| **President Ronald Reagan** | | | | |
| Anthony Kennedy | Powell | Nov 30, 1987 | 97-0 No. 16 | C Feb 3, 1988 |
| Robert Bork | Powell | Jul 7, 1987 | 42-58 No. 348 | R Oct 23, 1987 |
| Antonin Scalia | Rehnquist | Jun 24, 1986 | 98-0 No. 267 | C Sep 17, 1986 |
| William Rehnquist[2] | Burger | Jun 20, 1986 | 65-33 No. 266 | C Sep 17, 1986 |
| Sandra Day O'Connor | Stewart | Aug 19, 1981 | 99-0 No. 274 | C Sep 21, 1981 |
| **President Gerald Ford** | | | | |
| John Paul Stevens | Douglas | Nov 28, 1975 | 98-0 No. 603 | C Dec 17, 1975 |
| **President Richard Nixon** | | | | |
| William Rehnquist | Harlan | Oct 22, 1971 | 68-26 No. 450 | C Dec 10, 1971 |
| Lewis Powell, Jr. | Black | Oct 22, 1971 | 89-1 No. 439 | C Dec 6, 1971 |
| Harry Blackmun | Fortas | Apr 15, 1970 | 94-0 No. 143 | C May 12, 1970 |
| G. Harrold Carswell | Fortas | Jan 19, 1970 | 45-51 No. 122 | R Apr 8, 1970 |
| Clement Haynsworth, Jr. | Fortas | Aug 21, 1969 | 45-55 No. 154 | R Nov 21, 1969 |
| Warren Burger[3] | Warren | May 23, 1969 | 74-3 No. 35 | C Jun 9, 1969 |
| **President Lyndon Johnson** | | | | |
| Homer Thornberry | Fortas | Jun 26, 1968 | | W Oct 4, 1968 |
| Abe Fortas[4] | Warren | Jun 26, 1968 | | W Oct 4, 1968 |
| Thurgood Marshall | Clark | Jun 13, 1967 | 69-11 No. 240 | C Aug 30, 1967 |
| Abe Fortas | Goldberg | Jul 28, 1965 | V | C Aug 11, 1965 |

| President John Kennedy | | | | | | |
|---|---|---|---|---|---|---|
| Arthur Goldberg | Frankfurter | Aug 31, 1962 | V | | C | Sep 25, 1962 |
| Byron White | Whittaker | Apr 3, 1962 | V | | C | Apr 11, 1962 |
| **President Dwight Eisenhower** | | | | | | |
| Potter Stewart | Burton | Jan 17, 1959 | 70-17 | | C | May 5, 1959 |
| Charles Whittaker | Reed | Mar 2, 1957 | V | | C | Mar 19, 1957 |
| William Brennan, Jr. | Minton | Jan 14, 1957 | V | | C | Mar 19, 1957 |
| John Harlan | Jackson | Jan 10, 1955 | 71-11 | | C | Mar 16, 1955 |
| John Harlan | Jackson | Nov 9, 1954 | | | N | |
| Earl Warren[5] | Vinson | Jan 11, 1954 | V | | C | Mar 1, 1954 |
| **President Harry Truman** | | | | | | |
| Sherman Minton | Rutledge | Sep 15, 1949 | 48-16 | | C | Oct 4, 1949 |
| Tom Clark | Murphy | Aug 2, 1949 | 73-8 | | C | Aug 18, 1949 |
| Fred Vinson[6] | Stone | Jun 6, 1946 | V | | C | Jun 20, 1946 |
| Harold Burton | Roberts | Sep 19, 1945 | V | | C | Sep 19, 1945 |
| **President Franklin Roosevelt** | | | | | | |
| Wiley Rutledge | Byrnes | Jan 11, 1943 | V | | C | Feb 8, 1943 |
| Robert Jackson | Stone | Jun 12, 1941 | V | | C | Jul 7, 1941 |
| James Byrnes | McReynolds | Jun 12, 1941 | V | | C | Jun 12, 1941 |
| Harlan Stone[7] | Hughes | Jun 12, 1941 | V | | C | Jun 27, 1941 |
| Frank Murphy | Butler | Jan 4, 1940 | V | | C | Jan 16, 1940 |
| William Douglas | Brandeis | Mar 20, 1939 | 62-4 | | C | Apr 4, 1939 |
| Felix Frankfurter | Cardozo | Jan 5, 1939 | V | | C | Jan 17, 1939 |
| Stanley Reed | Sutherland | Jan 15, 1938 | V | | C | Jan 25, 1938 |
| Hugo Black | Van Devanter | Aug 12, 1937 | 63-16 | | C | Aug 17, 1937 |
| **President Herbert Hoover** | | | | | | |
| Benjamin Cardozo | Holmes | Feb 15, 1932 | V | | C | Feb 24, 1932 |
| Owen Roberts | Sanford | May 9, 1930 | V | | C | May 20, 1930 |
| John Parker | Sanford | Mar 21, 1930 | 39-41 | | R | May 7, 1930 |
| Charles Hughes[8] | Taft | Feb 3, 1930 | 52-26 | | C | Feb 13, 1930 |
| **President Calvin Coolidge** | | | | | | |
| Harlan Stone | McKenna | Jan 5, 1925 | 71-6 | | C | Feb 5, 1925 |
| **President Warren Harding** | | | | | | |
| Edward Sanford | Pitney | Jan 24, 1923 | V | | C | Jan 29, 1923 |
| Pierce Butler | Day | Dec 5, 1922 | 61-8 | | C | Dec 21, 1922 |
| Pierce Butler | Day | Nov 21, 1922 | | | N | |
| George Sutherland | Clarke | Sep 5, 1922 | V | | | Sep 5, 1922 |
| William Taft[9] | White | Jun 30, 1921 | V | | C | Jun 30, 1921 |
| **President Woodrow Wilson** | | | | | | |
| John Clarke | Hughes | Jul 14, 1916 | V | | C | Jul 24, 1916 |
| Louis Brandeis | Lamar | Jan 28, 1916 | 47-22 | | C | Jun 1, 1916 |
| James McReynolds | Lurton | Aug 19, 1914 | 44-6 | | C | Aug 29, 1914 |
| **President William Taft** | | | | | | |
| Mahlon Pitney | Harlan | Feb 19, 1912 | 50-26 | | C | Mar 13, 1912 |
| Joseph Lamar | Moody | Dec 12, 1910 | V | | C | Dec 15, 1910 |
| Willis Van Devanter | White | Dec 12, 1910 | V | | C | Dec 15, 1910 |
| Edward White[10] | Fuller | Dec 12, 1910 | V | | C | Dec 12, 1910 |
| Charles Hughes | Brewer | Apr 25, 1910 | V | | C | May 2, 1910 |

| Name | Seat | Date | Vote | | Result | Date |
|---|---|---|---|---|---|---|
| Horace Lurton | Peckham | Dec 13, 1909 | V | | C | Dec 20, 1909 |
| **President Theodore Roosevelt** | | | | | | |
| William Moody | Brown | Dec 3, 1906 | V | | C | Dec 12, 1906 |
| William Day | Shiras | Feb 19, 1903 | V | | C | Feb 23, 1903 |
| Oliver Holmes | Gray | Dec 2, 1902 | V | | C | Dec 4, 1902 |
| **President William McKinley** | | | | | | |
| Joseph McKenna | Field | Dec 16, 1897 | V | | C | Jan 21, 1898 |
| **President Grover Cleveland** | | | | | | |
| Rufus Peckham | Jackson | Dec 3, 1895 | V | | C | Dec 9, 1895 |
| Edward White | Blatchford | Feb 19, 1894 | V | | C | Feb 19, 1894 |
| Wheeler Peckham | Blatchford | Jan 22, 1894 | 32-41 | | R | Feb 16, 1894 |
| William Hornblower | Blatchford | Dec 5, 1893 | 24-30 | | R | Jan 15, 1894 |
| William Hornblower | Blatchford | Sep 19, 1893 | | | N | |
| **President Benjamin Harrison** | | | | | | |
| Howell Jackson | Lamar | Feb 2, 1893 | V | | C | Feb 18, 1893 |
| George Shiras, Jr. | Bradley | Jul 19, 1892 | V | | C | Jul 26, 1892 |
| Henry Brown | Miller | Dec 23, 1890 | V | | C | Dec 29, 1890 |
| David Brewer | Matthews | Dec 4, 1889 | 53-11 | | C | Dec 18, 1889 |
| **President Grover Cleveland** | | | | | | |
| Melville Fuller[11] | Waite | Apr 30, 1888 | 41-20 | | C | Jul 20, 1888 |
| Lucius Lamar | Woods | Dec 6, 1887 | 32-28 | | C | Jan 16, 1888 |
| **President Chester Arthur** | | | | | | |
| Samuel Blatchford | Hunt | Mar 13, 1882 | V | | C | Mar 22, 1882 |
| Roscoe Conkling | Hunt | Feb 24, 1882 | 39-12 | | D | Mar 2, 1882 |
| Horace Gray | Clifford | Dec 19, 1881 | 51-5 | | C | Dec 20, 1881 |
| **President James Garfield** | | | | | | |
| Stanley Matthews | Swayne | Mar 14, 1881 | 24-23 | | C | May 12, 1881 |
| **President Rutherford Hayes** | | | | | | |
| Stanley Matthews | Swayne | Jan 26, 1881 | | | N | |
| William Woods | Strong | Dec 15, 1880 | 39-8 | | C | Dec 21, 1880 |
| John Harlan | Davis | Oct 16, 1877 | V | | C | Nov 29, 1877 |
| **President Ulysses Grant** | | | | | | |
| Morrison Waite[12] | Chase | Jan 19, 1874 | 63-0 | | C | Jan 21, 1874 |
| Caleb Cushing[13] | Chase | Jan 9, 1874 | | | W | Jan 13, 1874 |
| George Williams[14] | Chase | Dec 1, 1873 | | | W | Jan 8, 1874 |
| Ward Hunt | Nelson | Dec 3, 1872 | V | | C | Dec 11, 1872 |
| Joseph Bradley | (new seat) | Feb 7, 1870 | 46-9 | | C | Mar 21, 1870 |
| William Strong | Grier | Feb 7, 1870 | | | C | Feb 18, 1870 |
| Edwin Stanton[15] | Grier | Dec 20, 1869 | 46-11 | | C | Dec 20, 1869 |
| Ebenezer Hoar | (new seat) | Dec 14, 1869 | 24-33 | | R | Feb 3, 1870 |
| **President Andrew Johnson** | | | | | | |
| Henry Stanbery | Catron | Apr 16, 1866 | | | N | |
| **President Abraham Lincoln** | | | | | | |
| Salmon Chase[16] | Taney | Dec 6, 1864 | V | | C | Dec 6, 1864 |
| Stephen Field | (new seat) | Mar 6, 1863 | V | | C | Mar 10, 1863 |
| David Davis | Campbell | Dec 1, 1862 | V | | C | Dec 8, 1862 |
| Samuel Miller | Daniel | Jul 16, 1862 | V | | C | Jul 16, 1862 |
| Noah Swayne | McLean | Jan 21, 1862 | 38-1 | | C | Jan 24, 1862 |

| President James Buchanan | | | | | |
|---|---|---|---|---|---|
| Jeremiah Black | Daniel | Feb 5, 1861 | 25-26 | R | Feb 21, 1861 |
| Nathan Clifford | Curtis | Dec 9, 1857 | 26-23 | C | Jan 12, 1858 |
| **President Franklin Pierce** | | | | | |
| John Campbell | McKinley | Mar 21, 1853 | V | C | Mar 22, 1853 |
| **President Millard Fillmore** | | | | | |
| William Micou | McKinley | Feb 14, 1853 | | N | |
| Geoge Badger | McKinley | Jan 3, 1853 | | W | Feb 14, 1853 |
| Edward Bradford | McKinley | Aug 16, 1852 | | N | |
| Benjamin Curtis | Woodbury | Dec 11, 1851 | V | C | Dec 20, 1851 |
| **President James Polk** | | | | | |
| Robert Grier | Baldwin | Aug 3, 1846 | V | C | Aug 4, 1846 |
| Levi Woodbury | Story | Dec 23, 1845 | V | C | Jan 31, 1846 |
| George Woodward | Baldwin | Dec 23, 1845 | 20-29 | R | Jan 22, 1846 |
| **President John Tyler** | | | | | |
| John Read | Baldwin | Feb 7, 1845 | | N | |
| Samuel Nelson | Thompson | Feb 4, 1845 | V | C | Feb 14, 1845 |
| Reuben Walworth | Thompson | Dec 4, 1844 | | W | Feb 4, 1845 |
| Edward King | Baldwin | Dec 4, 1844 | | W | Feb 7, 1845 |
| Reuben Walworth[17] | Thompson | Jun 17, 1844 | | N | Jun 17, 1844 |
| John Spencer | Thompson | Jun 17, 1844 | | W | Jun 17, 1844 |
| Edward King | Baldwin | Jun 5, 1844 | 29-18 | P | Jun 15, 1844 |
| Reuben Walworth | Thompson | Mar 13, 1844 | 27-20 | W | Jun 17, 1844 |
| John Spencer | Thompson | Jan 9, 1844 | 21-26 | R | Jan 31, 1844 |
| **President Martin Van Buren** | | | | | |
| Peter Daniel | Barbour | Feb 26, 1841 | 25-5 | C | Mar 2, 1841 |
| John McKinley | (new seat) | Sep 18, 1837 | V | C | Sep 25, 1837 |
| **President Andrew Jackson** | | | | | |
| John Catron | (new seat) | Mar 3, 1837 | 28-15 | C | Mar 8, 1837 |
| William Smith | (new seat) | Mar 3, 1837 | 23-18 | D | Mar 8, 1837 |
| Philip Barbour | Duvall | Dec 28, 1835 | 30-11 | C | Mar 15, 1836 |
| Roger Taney[18] | Marshall | Dec 28, 1835 | 29-15 | C | Mar 15, 1836 |
| Roger Taney | Duvall | Jan 15, 1835 | 24-21 | P | Mar 3, 1835 |
| James Wayne | Johnson | Jan 6, 1835 | V | C | Jan 9, 1835 |
| Henry Baldwin | Washington | Jan 4, 1830 | 41-2 | C | Jan 6, 1830 |
| John McLean | Trimble | Mar 6, 1829 | V | C | Mar 7, 1829 |
| **President John Quincy Adams** | | | | | |
| John Crittenden | Trimble | Dec 17, 1828 | 23-17 | P | Feb 12, 1829 |
| Robert Trimble | Todd | Apr 11, 1826 | 27-5 | C | May 9, 1826 |
| **President James Monroe** | | | | | |
| Smith Thompson | Livingston | Dec 5, 1823 | V | C | Dec 9, 1823 |
| **President James Madison** | | | | | |
| Gabriel Duvall | Chase | Nov 15, 1811 | V | C | Nov 18, 1811 |
| Joseph Story | Cushing | Nov 15, 1811 | V | C | Nov 18, 1811 |
| John Quincy Adams | Cushing | Feb 21, 1811 | | D | Feb 22, 1811 |
| Alexander Wolcott | Cushing | Feb 4, 1811 | 9-24 | R | Feb 13, 1811 |
| Levi Lincoln | Cushing | Jan 2, 1811 | | D | Jan 3, 1811 |
| **President Thomas Jefferson** | | | | | |

| Thomas Todd | (new seat) | Feb 28, 1807 | V | | C | Mar 2, 1807 |
|---|---|---|---|---|---|---|
| H. Brockholst Livingston | Paterson | Dec 13, 1806 | V | | C | Dec 17, 1806 |
| William Johnson | Moore | Mar 22, 1804 | V | | C | Mar 24, 1804 |
| **President John Adams** | | | | | | |
| John Marshall[19] | Ellsworth | Jan 20, 1801 | V | | C | Jan 27, 1801 |
| John Jay[20] | Ellsworth | Dec 18, 1800 | | | D | Dec 19, 1800 |
| Alfred Moore | Iredell | Dec 4, 1799 | V | | C | Dec 10, 1799 |
| Bushrod Washington | Wilson | Dec 19, 1798 | V | | C | Dec 20, 1798 |
| **President George Washington** | | | | | | |
| Oliver Ellsworth[21] | Jay | Mar 3, 1796 | 21-1 | | C | Mar 4, 1796 |
| Samuel Chase | Blair | Jan 26, 1796 | V | | C | Jan 27, 1796 |
| William Cushing[22] | Jay | Jan 26, 1796 | | | D | Jan 27, 1796 |
| John Rutledge[23] | Jay | Dec 10, 1795 | 10-14 | | R | Dec 15, 1795 |
| William Paterson | Johnson | Mar 4, 1793 | V | | C | Mar 4, 1793 |
| William Paterson | Johnson | Feb 27, 1793 | | | W | Feb 28, 1793 |
| Thomas Johnson | Rutledge | Nov 1, 1791 | V | | C | Nov 7, 1791 |
| James Iredell | Harrison | Feb 8, 1790 | V | | C | Feb 10, 1790 |
| John Blair | | Sep 24, 1789 | V | | C | Sep 26, 1789 |
| James Wilson | | Sep 24, 1789 | V | | C | Sep 26, 1789 |
| Robert Harrison | | Sep 24, 1789 | | | D | Sep 26, 1789 |
| William Cushing | | Sep 24, 1789 | V | | C | Sep 26, 1789 |
| John Rutledge | | Sep 24, 1789 | V | | C | Sep 26, 1789 |
| John Jay[24] | | Sep 24, 1789 | V | | C | Sep 26, 1789 |

*This chart lists only nominations officially submitted to the Senate, and does not include nominations announced but never officially submitted (such as Douglas Ginsburg in 1987).*

*The date of the nomination is the date on the president's letter to the Senate (except the undated 1937 Hugo Black letter). Some nominees may have been serving before this date under recess appointments.*

**Vote Key:**

89-7 No. 242 (for example) - Tally and roll call vote number

V - Voice Vote

**Result Key:**

C - Confirmed and served (117) [25]

D - Declined (7)

N - No Action (9)

P - Postponed (3)

R - Rejected (12)

W - Withdrawn (12)

1. Nominated to chief justice.

2. Sitting justice elevated to chief justice.

3. Nominated to chief justice.

4. Sitting justice nominated to chief justice; nomination filibustered and withdrawn.

5. Nominated to chief justice.

6. Nominated to chief justice.

7. Sitting justice elevated to chief justice.

8. Nominated to chief justice.

9. Nominated to chief justice.

10. Sitting justice elevated to chief justice.

11. Nominated to chief justice.

12. Nominated to chief justice.

13. Unsuccessful nominee for chief justice.

14. Unsuccessful nominee for chief justice.

15. Confirmed, but died before he took office.

16. Nominated to chief justice.

17. On motion to proceed to consider the nomination, an objection was made.

18. Nominated to chief justice.

19. Nominated to chief justice.

20. Nominated to chief justice.

21. Nominated to chief justice.

22. Sitting justice nominated to chief justice, but declined and continued to serve as an associate justice.

23. Offered his services as a replacement for the soon-to-retire John Jay in June 1795, so President Washington offered him a temporary commission (Senate was in recess). The Senate convened in December and voted on the nomination, making Rutledge the first rejected Supreme Court nominee and the only "recess appointed" justice not to be subsequently confirmed by the Senate.

24. Nominated to chief justice.

25. 7 nominees (see D in Result Key) were confirmed, but declined to serve.

Return to top of page

SENATORS | COMMITTEES | LEGISLATION & RECORDS | ART & HISTORY | VISITORS | REFERENCE

Contact | Content Responsibility | Usage Policy | PDF Help | Privacy Policy | www.senate.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN S. MICHEL, *pro se* | ) |
| *Plaintiff,* | ) |
| v. | ) |
| | ) |
| ADDISON MITCHELL MCCONNELL, JR., | ) |
| CHARLES ERNEST GRASSLEY, and | ) |
| UNITED STATES SENATE, | ) |
| *Defendants.* | ) |

Civil Action No.: 16-1729 (RC)

**AFFIDAVIT**

STATE OF NEW MEXICO        )
                           )
COUNTY OF SANTA FE         )

STEVEN S. MICHEL, upon being duly sworn, states the following:

My name is Steven S. Michel. I am the Plaintiff (Petitioner) and I am capable of making this affidavit. I have read the foregoing *Memorandum of Points and Authorities in Response to Motion to Dismiss,* and the facts stated therein are true and correct to the best of my knowledge and belief.

Further Affiant sayeth not.

STEVEN S. MICHEL

SUBSCRIBED AND SWORN to before me this 7th   day of November, 2016.

My commission expires: February 6, 2018

Glenda M. Murphy, Notary

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEVEN S. MICHEL,** *pro se*         ) | |
|         ***Plaintiff,***    ) | |
| v.        ) | **Civil Action No.: 16-1729 (RC)** |
|         ) | |
| **ADDISON MITCHELL MCCONNELL, JR.,**     ) | |
| **CHARLES ERNEST GRASSLEY, and**     ) | |
| **UNITED STATES SENATE,**     ) | |
|         ***Defendants.***    ) | |
| _____ ) | |

## *PROPOSED* ORDER

WHERAS this matter came before the Court upon Defendants' *Motion to Dismiss,* and the Court having considered the facts, arguments and authority submitted in support of and in opposition to that motion, the Court FINDS that the *Motion to Dismiss* should be denied.

IT IS, THEREFORE, ORDERED that Defendants' *Motion to Dismiss* is hereby DENIED.

Date_____

_____
RUDOLPH CONTRERAS
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2016, I served the foregoing *Memorandum of Points and Authorities in Opposition to Motion to Dismiss,* by filing it electronically with the Court's CM/ECF system and by emailing pdf versions to counsel, as indicated below, who have entered their appearance on behalf of Defendants:

Patricia Mack Bryan
Senate Legal Counsel
patricia_bryan@legal.senate.gov

Morgan J. Frankel
Deputy Senate Legal Counsel
morgan_frankel@legal.senate.gov

Grant R. Vinik
Assistant Senate Legal Counsel
grant_vinik@legal.senate.gov

_____
Steven S. Michel