**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEVEN S. MICHEL, | : |
| | : |
|     Plaintiff, | :    Civil Action No.:    16-1729 (RC) |
| | : |
| v. | :    Re Documents No.:    12, 16 |
| | : |
| ADDISON MITCHELL MCCONNELL, *et al.*, | : |
| | : |
|     Defendants. | : |

**<u>MEMORANDUM OPINION</u>**

**GRANTING DEFENDANTS' MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**I.  INTRODUCTION**

In this case, the Court considers whether a citizen has standing to sue to compel the United States Senate to take action on a President's Supreme Court nomination.  Plaintiff Steven Michel seeks a preliminary injunction and writ of mandamus compelling the Senate to take action on President Obama's nomination of Merrick Garland to the United States Supreme Court.  He claims that Senators McConnell and Grassley have violated his Seventeenth Amendment right to elect his senators by depriving his home-state senators of a voice in the Senate.  Because Mr. Michel's alleged injuries are not sufficiently individualized, his proper recourse is through the political process, not the judiciary.  Accordingly, the Court grants Defendants' Motion to Dismiss.

**II.  FACTUAL BACKGROUND**

Mr. Steven Michel seeks a preliminary injunction and writ of mandamus compelling the United States Senate to "vote before the end of the 114th Congress on whether the Senate will

provide its advice and consent to the nomination of [Chief] Judge Garland to the United States Supreme Court." Mot. for Prelim. Inj., at 4, ECF No. 12. He claims that Senators McConnell and Grassley have taken steps to prevent the entire Senate from voting on President Obama's nomination, neglecting their constitutional duties to provide advice and consent on presidential nominations. *See* Emergency Pet. for Declaratory J. and Writ of Mandamus ("Emergency Pet."), at 5–7, ECF No. 1. Mr. Michel contends that a small group of senators have deprived his home-state senators—Senators Tom Udall and Martin Heinrich—of their constitutional prerogative to vote on the advice and consent of a presidential appointee. *See* Mot. for Prelim. Inj., at 8–9; Emergency Pet. at 6–7. Because his state's senators have been unable to vote on Chief Judge Garland's nomination, Mr. Michel contends that his own vote for United States senators has been diminished as compared to those voters in states with senators "with disproportionate power to control Senate action." *See* Mot. for Prelim. Inj., at 9–11. This, he argues, violates the Seventeenth Amendment's guarantee of senators with "one vote" elected by the people of their states. *See id.* at 10.

### III. ANALYSIS

Defendants move to dismiss on the grounds that Mr. Michel lacks standing to maintain this action. *See* Defs.' Mem. of P. & A. in Opp. to Pl.'s Mot. for Prelim. Inj. and in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mot. to Dismiss"), at 5–14, ECF No. 16. Even if they did not, the Court would have a *sua sponte* obligation to raise the issue of Article III standing because it operates as a limitation on the Court's subject-matter jurisdiction. *See Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 436 (D.C. Cir. 2002). If the Court does not have subject-matter jurisdiction, it cannot afford Plaintiff any relief—injunctive or otherwise. *See Zukerberg v. D.C. Bd. of Elections & Ethics*, 999 F. Supp. 2d 79, 82 (D.D.C. 2013). It also "may not . . . 'resolve

contested questions of law when its jurisdiction is in doubt.'" *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

Article III standing requires a "concrete and particularized injury" that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citation and quotation marks omitted). The injury must be "of individual concern;" it is not enough for a party to show an undifferentiated, "general interest common to all members of the public." *See Massachusetts v. Mellon*, 262 U.S. 447, 487 (1923); (internal citations and quotation marks omitted); *United States v. Richardson*, 418 U.S. 166, 176–77 (1974) (quoting *Ex parte Levitt*, 302 U.S. 633, 636 (1937)). The proper recourse for persons who have a generalized grievance is through the political process, not the courts. *See Lujan*, 504 U.S. at 576; *Mellon*, 262 U.S. at 487–89. For a court to rule on the constitutionality of the activities of another branch without a uniquely injured individual "would be, not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and coequal department, an authority which plainly we do not possess." *Mellon*, 262 U.S. at 489. In *Ex parte Levitt*, a plaintiff sued contending that Justice Hugo Black's appointment violated the Ineligibility Clause of the Constitution. *See* 302 U.S. at 633–34; *Lujan*, 504 U.S. at 574. The Supreme Court concluded that the plaintiff did not have standing as a citizen and member of the Supreme Court bar because for "a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained . . . a direct injury as the result of that action and [not just] that he has merely a general interest common to all members of the public." *Ex parte Levitt*, 302 U.S. at 634; *accord Lujan*, 504 U.S. at 575. Other courts have used similar reasoning to dismiss lawsuits seeking to compel the United States Senate to vote on a pending Supreme Court appointment. *See, e.g.*, *Raiser v.*

*Daschle*, 54 F. App'x 305, 307 (10th Cir. 2002) ("The pendency of other litigation initiated by [the plaintiff] is insufficient to give him standing to challenge the Senate's referral of judicial nominations to the Judiciary Committee."); *Kimberlin v. McConnell*, No. GJH-16-1211, 2016 U.S. Dist. LEXIS 72948, at *3 (D. Md. June 3, 2016) (dismissing a citizen's lawsuit seeking a declaration that the Senate waived its right to advise and consent with respect to the nomination of Merrick Garland, in part because he "fail[ed] to show he ha[d] suffered injury in fact").

Cases predicated upon the "derivative" dilution of voting power—where a voter sues because of the dilution of his representative's voting power, *see Michel v. Anderson*, 14 F.3d 623, 626 (D.C. Cir. 1994)—require a voter to show some form of actual structural denial of their representative's right to vote. *See Kardules v. City of Columbus*, 95 F.3d 1335, 1349 (6th Cir. 1996) (noting that the D.C. Circuit found a derivative-dilution injury "judicially cognizable, because it differed only in degree, not in kind, from a complete denial of their representatives' right to vote"). This is because "[i]t would be unwise to permit the federal courts to become a higher legislature where a congressman who has failed to persuade his colleagues can always renew the battle." *Melcher v. Fed. Open Mkt. Comm.*, 836 F.2d 561, 564 (D.C. Cir. 1987). The prototypical vote-dilution cases involve a mathematical showing of the loss of a representative voice. *See Kardules*, 95 F.3d at 1349–50; *see also Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 331–32 (1999) (through an expert, the plaintiffs showed that a census practice would lead to vote dilution via redistricting).

Mr. Michel has not shown that he has suffered an individualized injury such that he can maintain this action. This alleged diminution of his vote for United States Senators is the type of undifferentiated harm common to all citizens that is appropriate for redress in the political sphere: his claim is not that he has been unable to cast votes for Senators, but that his home-state

Senators have been frustrated by the rules and leadership of the United States Senate.  This is far from the type of direct, individualized harm that warrants judicial review of a "case or controversy."  It is instead a request for the Court to "assume a position of authority over the governmental acts of another and coequal department, an authority which plainly [it] do[es] not possess."  *Mellon*, 262 U.S. at 489.  This would not only require the Court to become "a higher legislature where a [Senator or Representative] who has failed to persuade his colleagues can always renew the battle," *see Melcher*, 836 F.2d at 564, but would also require it to entertain suits from all citizens who feel that their representatives have been treated unfairly by the legislative process.  Although such claims may at times be justified, the Framers of the Constitution left their resolution to the political branches, not the judiciary.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 16) is **GRANTED** and Plaintiff's Motion for a Preliminary Injunction (ECF No. 12) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 17, 2016                                                                            RUDOLPH CONTRERAS
                                                                                                                            United States District Judge